# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| PAUL F. JANNUZZO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 1:15-cv-02445-TWT |
| GLOCK, INC., et al, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS GLOCK, INC., CONSULTINVEST, INC. AND JOHN F. RENZULLI'S MOTION TO DISMISS

John E. Floyd
Ronan P. Doherty
Tiana S. Mykkeltvedt
Amanda Seals Bersinger
BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
Tel.   (404) 881-4100
Fax   (404) 881-4111

*Attorneys for Defendants*
*Glock, Inc., Consultinvest, Inc., and John F. Renzulli*

# TABLE OF CONTENTS

Introduction ..................................................................................................1

BACKGROUND ...........................................................................................2

ARGUMENT AND CITATION OF AUTHORITY...............................................10

   I.  The Court Should Dismiss the Malicious Prosecution Claim.......................11

      A.     Jannuzzo Has No Claim for Malicious Prosecution
           Because He Committed the Crimes For Which
           He Was Prosecuted....................................................................11

      B.     Jannuzzo Cannot Plead or Prove That the Prosecution
           Terminated in His Favor .............................................................13

      C.     Jannuzzo Cannot Plead or Prove an Absence of
           Probable Cause ..........................................................................15

           1.  The Jury's Verdict Conclusively Establishes Probable
               Cause ...............................................................................16

           2.  The Trial Court's Repeated Denial of Jannuzzo's
               Directed Verdict Motions Conclusively Establishes
               Probable Cause.................................................................18

           3.  Jannuzzo Cannot Plead an Absence of Probable
               Cause in the Face of the Trial Court Record................................19

               a.  The Additional Evidence Presented at the Plea
                   in Bar Confirms Probable Cause.................................21

               b.  Jannuzzo's May 2008 Indictment for RICO
                   Conspiracy Was Timely..............................................22

      D.     The Court Should Dismiss the Malicious Prosecution Claim
           Against Defendant John Renzulli......................................................24

i

II. Jannuzzo Cannot State a Claim Under 42 U.S.C. § 1983 .............................25

    A.    Jannuzzo's Failure to Allege a Malicious Prosecution
        Claim Precludes a § 1983 Claim on the Same Theory .......................25

    B.    Jannuzzo Cannot Allege that the Defendants Acted
        Under Color of State Law ...................................................................25

        1. Jannuzzo Has Not Alleged a Plausible Conspiracy
          Between the Private Defendants and the State Actors.......................26

        2. Jannuzzo Cannot Allege that the Defendants Performed
          a Public Function..............................................................................29

        3. Alternatively, the Defendants are Entitled to Qualified
          Immunity ..........................................................................................32

    C.    Jannuzzo Cannot Plead a § 1983 Claim Based on
        an Alleged Violation of the Fourteenth Amendment..........................33

III.  Jannuzzo Cannot State a Georgia RICO Claim...........................................33

    A.    Jannuzzo's Civil RICO Claim is Time-Barred ..................................33

    B.    Jannuzzo Cannot Convert a Malicious Prosecution
        Claim into a RICO Claim....................................................................37

    C.    Jannuzzo Is Estopped to Deny That He Committed
        the Crimes Charged in the Indictment ...............................................39

    D.    Jannuzzo Cannot Plead That the Defendants' Alleged
        Racketeering Proximately Caused Him Any Injury ...........................40

    E.    The Complaint Fails to Adequately Plead the Required
        Elements of a Georgia RICO Claim....................................................41

        1. The Complaint Fails to Allege Witness Tampering .....................42

a. The Complaint Does Not Allege That Any Defendant Tampered With Peter Manown's Testimony..............................................................................42

b. The Complaint Does Not Allege That Any Defendant Tampered with Kevin Connor's Testimony..............................................................................43

2. The Complaint Fails to Allege Adequately Tampering With Other Evidence...................................................................44

3. The Complaint Fails to Allege Perjury ..........................................45

F. The Complaint Fails to Allege a Violation of O.C.G.A. § 16-14-4(a) ........................................................................45

IV. The Court Should Dismiss Jannuzzo's Punitive Damages Claim .................................................................................................46

CONCLUSION....................................................................................................46

iii

# TABLE OF AUTHORITIES

**CASES**

*Albright v. Oliver*,
510 U.S. 266 (1994)................................................................................33

*Allen v. Wometco Cable TV of Clayton Cnty., Inc.*,
198 Ga. App. 103, 400 S.E.2d 362 (1990) .....................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................29, 45

*Auburn Med. Ctr/, Inc. v. Andrus*,
9 F. Supp. 2d 1291 (M.D. Ala. 1998)...........................................................38

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................26, 45

*Bivens Gardens Office Bldg. v. Barnett Bank of Fla.*,
906 F.2d 1546 (11th Cir. 1990) ...................................................................34

*Blackford v. Wal-Mart Stores, Inc.*,
912 F. Supp. 537 (S.D. Ga. 1996) ........................................................ 12-13

*Blalock v. Annewakee*,
206 Ga. App. 676, 426 S.E.2d 165 (1992) ...................................................34

*Brown v. Lewis*,
4:08-cv-150-CDL, 2009 WL 1457139, at *7
(M.D. Ga. May 22, 2009) ...........................................................................27

*Brown v. State*,
322 Ga. App. 446, 745 S.E.2d 699 (2013) ............................................. 38-39

*Brown v. State*,
242 Ga. 536 (1978)...................................................................................31

*Cochran Mill Assocs. v. Stephens*,
    286 Ga. App. 241, 648 S.E.2d 764 (2007) ......................................................34

*Cohen v. Corwin*,
    980 So. 2d 1153 (Fla. Ct. App. 2008) ........................................................13

*Condon v. Vickery*,
    270 Ga. App. 322, 606 S.E.2d 336 (2004) ............................................. 16-17

*Craig v. City of Yazoo*,
    984 F. Supp. 2d 616 (S.D. Miss. 2013) ......................................................14

*Dale v. McCord*,
    No. 2:13-cv-10031-SLB, 2014 WL 4926186, at *5
    (N.D. Ala. Sept. 30, 2014) ......................................................................32

*Davidson v. Castner-Knott Dry Goods Co.*,
    202 S.W.3d 597 (Ky. Ct. App. 2006).........................................................13

*Davis v. Williams Commc'n, Inc.*,
    258 F. Supp. 2d 1348 (N.D. Ga. 2003)......................................................10

*Day Realty Assocs., Inc. v. McMillian*,
    247 Ga. 561, 277 S.E.2d 663 (1981) .........................................................24

*Dorsey v. State*,
    279 Ga. 534, 541, 615 S.E.2d 512, 519 (2005) ...................................... 36-37

*Evans v. Nevada Cnty. Sheriff's Dep't*,
    No. 2:13-cv-01775-TLN-DAD, 2014 WL 6895569, at *11
    (E.D. Cal. Dec. 8, 2014) ..........................................................................20

*Filarsky v. Delia*,
    132 S. Ct. 1657 (2012)...........................................................................30

*FindTheBest.com, Inc. v. Lumen View Tech., LLC*,
    20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014) ..................................................38

*Frantz v. Walled*,
    513 F. App'x 815 (11th Cir. 2013)................................................................35

*Gentry v. Volkswagen of Am., Inc.*,
    238 Ga. App. 785, 521 S.E.2d 13 (1999) ......................................................41

*Georgia Loan & Trust Co v. Johnston*,
    116 Ga. 628, 43 S.E. 27 (1902) ............................................................. 16-17

*Gray v. Dental One Assocs.*,
    269 Ga. App. 888, 605 S.E.2d 366 (2004) ...................................................15

*Grider v. City of Auburn*,
    618 F.3d 1240 (11th Cir. 2010) ....................................................................25

*Halmos v. Bombardier Aero Corp.*,
    404 F. App'x 376 (11th Cir. 2010)................................................................11

*Hartshorn v. Smith*,
    104 Ga. 235, 30 S.E. 666 (1898) .................................................................16

*Harvey v. Harvey*,
    949 F.2d 1127 (11th Cir. 1992) ............................................................*passim*

*Heflin v. Goodman*,
    288 Ga. App. 454, 654 S.E.2d 417 (2007) ...................................................13

*Higdon v. Smith*,
    565 F. App'x 791 (11th Cir. 2014)................................................................29

*Holmes v. Kucynda*,
    321 F.3d 1069, 1079 (11th Cir. 2003)..........................................................16

*I.S. Joseph Co. v. J. Lauritzen A/S*,
    751 F.2d 265 (8th Cir. 1984) ........................................................................37

*Ippolito v. Florida*,
824 F. Supp. 1562 (M.D. Fla. 1993) ...............................................................38

*Jackson v. Metro. Edison Co.*,
419 U.S. 345 (1974)........................................................................................29

*Jackson v. State*,
156 Ga. 842(3), 120 S.E. 535 (1923) .............................................................31

*Jannuzzo v. State*,
322 Ga. App. 760, 746 S.E.2d 238 (2013) .............................................*passim*

*JSJ Ltd. P'ship v. Merhban*,
205 Cal. App. 4th 1512 (2012) .......................................................................14

*Kitch v. City of Kirkland*,
No. C11-823RAJ, 2012 WL 924345, at *9
(W.D. Wash. Mar. 19, 2012) .........................................................................20

*Longino v. Bank of Ellijay*,
228 Ga. App. 37, 491 S.E.2d 81 (1997) ........................................................40

*Lucas v. District of Columbia*,
505 F. Supp. 2d 122 (D.D.C. 2007)................................................................14

*Markowitz v. Weiland*,
243 Ga. App. 151, 532 S.E.2d 705 (2000) .....................................................39

*McDaniel v. Yearwood*,
No. 2:11-CV-00165-RWS, 2012 WL 526078, at *14
(N.D. Ga. Feb. 16, 2012) ...............................................................................15

*McNeal Constr. Co. v. Wilson*,
271 Ga. 540, 522 S.E.2d 222 (1999) .............................................................34

*Monroe v. Siegler*,
256 Ga. 759, 353 S.E.2d 23 (1987) ........................................... 13, 18-19, 21

*Mullen v. Nezhat*,
     223 Ga. App. 278, 477 S.E.2d 417 (1996) ......................................................39

*Nakahara v. Bal*,
     No. 97-civ-2027-DLC, 1998 WL 35123, at *8
     (S.D.N.Y. Jan. 30, 1998) ...............................................................................38

*Nicholson v. Windham*,
     257 Ga. App. 429, 571 S.E.2d 466 (2002) ....................................................41

*Osborne v. Am. Multi-Cinema, Inc.*,
     348 F. App'x 535 (11th Cir. 2009)................................................................16

*Parrish v. Marquis*,
     172 S.W.3d 526 (Tenn. 2005) ......................................................................14

*Pickens v. Hollowell*,
     59 F.3d 1203 (1995) .......................................................................... 20-21, 32

*Pollman v. Swan*,
     289 Ga. 767, 716 S.E.2d 191 (2011) ............................................................39

*Raney v. Allstate Insurance Co.*,
     370 F.3d 1086 (11th Cir. 2004) ....................................................................38

*Remeneski v. Klinakis*,
     222 Ga. App. 12, 473 S.E.2d 223 ................................................................24

*Rendell-Baker v. Kohn*,
     457 U.S. 830 (1982)......................................................................................30

*Rotella v. Wood*,
     528 U.S. 549 (2000)......................................................................................34

*Rutledge v. State*,
     245 Ga. 768 (1980) .......................................................................................31

*S. Intermodal Logistics, Inc. v. D.J. Powers Co.*,
    251 Ga. App. 865, 555 S.E.2d 478 (2001) ............................................... 34-35

*S. Intermodal Logistics, Inc. v. D.J. Powers Co.*,
    10 F. Supp. 2d 1337 (S.D. Ga. 1998) ............................................................34

*Sands v. McCormick*,
    502 F.3d at 266 (3d Cir. 2007) ............................................................ 20-21

*Sedima v. Imrex Co.*,
    473 U.S. 479 (1985)..........................................................................................40

*SFM Hdgs., Ltd. v. Banc of Am. Sec., LLC*,
    600 F.3d 1334 (11th Cir. 2010) ....................................................................11

*Simpson v. Sanderson Farms, Inc.*,
    744 F.3d 702 (11th Cir. 2014) ......................................................................41

*Tinney v. Shores*,
    77 F.3d 378 (11th Cir. 1996) ........................................................................33

*United States v. Pendergraft*,
    297 F.3d 1198 (11th Cir. 2002) ....................................................................38

*von Bulow v. von Bulow*,
    657 F. Supp. 1134 (S.D.N.Y. 1987) ........................................................ 37-38

*Wal-Mart Stores, Inc. v. Blackford*,
    264 Ga. 612, 449 S.E.2d 293 (1994) ...................................................... 11-12

*Wilson v. Layne*,
    526 U.S. 603 (1999)..........................................................................................32

*Woods v. State*,
    240 Ga. 265, 239 S.E.2d 786 (1977) ............................................................31

*Wooten v. State*,
    240 Ga. App. 725, 524 S.E.2d 776 (1999) ...................................................22

**GEORGIA STATUTORY AND REGULATORY AUTHORITY**

O.C.G.A. § 16-10-32 ............................................................................... 42-43

O.C.G.A. § 16-10-93 ............................................................................... 42-44

O.C.G.A. § 16-10-94 ....................................................................................44

O.C.G.A. § 16-14-3 ..................................................................................37, 39

O.C.G.A. § 16-14-4 .....................................................................................45

O.C.G.A. § 16-14-6 ................................................................................. 39-40

O.C.G.A. § 16-14-8 ..................................................................................24, 34

O.C.G.A. § 17-3-2 ........................................................................................24

O.C.G.A. § 51-7-43 ......................................................................................19

Ga. Uniform R. Superior C. 42.1 ................................................................31

**UNITED STATES STATUTORY AND REGULATORY AUTHORITY**

18 U.S.C. § 923 ...........................................................................................4

18 U.S.C. § 1512 .........................................................................................44

42 U.S.C. § 1983 ................................................................................*passim*

Fed. R. Civ. P. 12 ......................................................................................28

Fed. R. Evid. 201 .......................................................................................10

U.S.S.G. § 8B2.1 ........................................................................................30

Deputy Attorney General's Memo of Sept. 9, 2015 ..................................30

**SECONDARY SOURCES**

Restatement (Second) of Torts § 660 cmt a (1977) .................................................13

## Introduction

A Cobb County jury convicted plaintiff Paul Jannuzzo of theft and for violating Georgia's RICO statute. The Cobb County Superior Court held that the evidence at trial was more than sufficient to convict Jannuzzo, relying on:

- Peter Manown's testimony that he and Jannuzzo had "conspired, over a number of years, to steal millions of dollars from their employer";

- Karl Walter's testimony "that Defendant confessed that he and Manown had stolen money from Glock, Inc. through an insurance scam";

- evidence showing that "Defendant was found in possession of the LaFrance pistol that belonged to his former employer four years after leaving employment;" and

- "Defendant fled the country after being indicted for the crimes and had to be extradited back to the United States."[1]

The Georgia Court of Appeals agreed that the State had proved Jannuzzo committed the theft charged in the indictment. But the appellate court reversed his conviction because, at trial, the State failed to prove the prosecution was timely.

Jannuzzo's Complaint in this Court does not allege that Jannuzzo is innocent. Instead, he alleges that the Cobb County DA and the Smyrna Police Department conspired with the defendants to frame a guilty man. On the facts

---

[1] *State v. Jannuzzo*, No. 08-9-2193-49, Order on Def.'s Mot. For New Trial at 5-6 (Sept. 28, 2012), a certified copy of which is attached hereto as Ex. A.

1356934.1

1

alleged—and on an underlying trial record that cannot be disputed—Jannuzzo has no claim against any defendant, and the Court should dismiss the Complaint.

## BACKGROUND

### *The LaFrance Specialties Pistol*

On August 26, 2007, Jannuzzo was arrested for assaulting his wife, Monika Bereczky.  Ms. Bereczky told the Atlanta police officers who responded to her 911 call that Jannuzzo was in the couple's home with his three minor children and that he was heavily armed.  The officers found multiple weapons in the home, including a loaded AR-15 assault rifle in the children's bedroom and a LaFrance Specialties .45 caliber pistol.[2]

When the Atlanta police department logged their receipt of the LaFrance pistol, an alert was triggered in a law enforcement database that listed the pistol as missing.[3]  In 2005, defendant Glock, Inc. ("Glock") had to report the pistol as missing because it could not locate the pistol during an ATF audit.[4]  Corporate records indicated that Glock had loaned the LaFrance pistol to Jannuzzo for use in

---

[2] *See State v. Jannuzzo*, Nos. 08-9-2193-49 and 09-9-2603-49, Order on Def.'s Mot. to Suppress at 1-3 (Jan. 19, 2012), a certified copy is attached as Ex. B.

[3] *Id*. at 3; *see also* Ex. A, Order on Def.'s Mot. for New Trial at 12.

[4] *Jannuzzo v. State*, 322 Ga. App. 760, 763–64, 746 S.E.2d 238, 241 (2013); *State v. Jannuzzo*, Nos. 08-9-2193-49 and 09-9-2603-49, Order on Def.'s Mots. at 4-5, a certified copy of which is attached hereto as Ex. C.

1356934.1

his work as its General Counsel.[5] Although Jannuzzo resigned in February 2003, Glock's paperwork did not indicate that Jannuzzo had ever returned the pistol.[6]

When Glock was unable to locate the pistol during the 2005 audit, defendant John Renzulli called Jannuzzo to ask if he still had the pistol. At that time, Renzulli was one of Glock's outside counsel and had long worked with Jannuzzo on product liability cases. During a pre-trial hearing, Renzulli testified that Jannuzzo told him he did not have the pistol and said that Glock's paperwork was wrong.[7] After a second inquiry from Renzulli, Jannuzzo responded with a September 9, 2005 e-mail regarding the ATF's audit that again suggested Glock's paperwork was wrong and urged Renzulli to find inventory records prepared "back when there was still monthly inventories and the company knew where everything was."[8] Unable to locate the gun at its premises or with its last known recipient, Glock had to report the gun as missing on September 22, 2005.[9]

---

[5] *See* Compl. [Doc. 1] ¶ 76; *see also* Ex. A, Order on Def.'s Mot. for New Trial at 11-12 (citing trial exhibits and testimony).

[6] *See* Compl. ¶ 76 (alleging that Glock's paperwork reflected that Jannuzzo had the pistol in 2003); Ex. C, Order on Def.'s Mots. at 2-3.

[7] Ex. C at 4-5; *see also* Compl. ¶ 121 (alleging that the trial court relied on Renzulli's pretrial testimony).

[8] *See* Ex. C, Order on Def.'s Mots. at 4-5; E-mail from P. Jannuzzo to J. Renzulli (Sept. 9, 2005), a true and correct copy of which is attached hereto as Ex. D.

[9] *See* Ex. C, Order on Def.'s Mots. at 5 ("State's Exhibit 9 (June 16, 2009 hearing) shows that on September 22, 2005 Glock, Inc., reported the gun as 'missing' to the

*The Cobb County Prosecution*

In May 2008, a Cobb County grand jury indicted Jannuzzo on one count of theft by conversion for stealing the La France pistol.[10]  The grand jury also indicted Jannuzzo for violating the Georgia RICO statute by conspiring to obtain property and money through a pattern of racketeering activity that included stealing the pistol and numerous additional thefts of hundreds of thousands of dollars from Glock.  In June 2009, the Cobb County DA obtained a superseding indictment that added to the RICO charge by alleging that Jannuzzo had obstructed justice by lying to a Smyrna Police Detective in 2008.[11]

*Pretrial Proceedings*

Jannuzzo filed several pre-trial motions, including a plea in bar making the same argument that he repeats in the Complaint: the statutes of limitations could

---

Smyrna Police."); Ex. A, Order on Def.'s Mot. for New Trial at 12 ("On September 22, 2005, having never recovered the LaFrance, Glock, Inc. reported the gun as 'missing' to the Smyrna police."); *see also* 18 U.S.C. § 923(g)(6) (requiring a report with the Attorney General and appropriate legal authorities after discovering that the pistol was missing from Glock's inventory).

[10] *See* Compl. ¶ 95; *see also State v. Jannuzzo*, No. 08-9-2193-49, Indictment (May 8, 2008) (the "2008 Indictment"), a certified copy of which is attached as Ex. E.

[11] *See* Compl. ¶ 95; *State v. Jannuzzo*, No. 09-9-2603-9, Indictment (June 11, 2009) (the "2009 Indictment), a certified copy of which is attached hereto as Ex. F. The trial court eventually struck the obstruction predicate.  *See Jannuzzo*, 322 Ga. App. at 761 n.1, 746 S.E.2d at 240.

1356934.1

4

not have been tolled until Jannuzzo's 2007 arrest because Glock knew he had the LaFrance pistol in 2003.[12]  During a pre-trial hearing, the Superior Court received testimony regarding Glock's knowledge of the pistol's whereabouts and Renzulli's 2005 communications with Jannuzzo on that topic.  Jannuzzo attended that hearing and his counsel cross-examined the State's witnesses.[13]

*Jannuzzo Fled the Country*

Before the trial court could conclude the pre-trial hearing, however, Jannuzzo—who was free on bond—fled the country.  Jannuzzo was eventually apprehended in the Netherlands, where he contested extradition back to the United States.[14]  During the course of the lengthy extradition proceedings that followed, Jannuzzo spent approximately 18 months in a Dutch prison.[15]  The Netherlands

---

[12] *Compare* Ex. C, Order on Def.'s Mots. at 2-3 ("The defense's argument is essentially that the business record exhibits of Glock, Inc. and the testimony at the hearings on June 16, 2009 and January 25, 201[2], show that Glock, Inc. had knowledge that the gun referenced in Count I was in the Defendant's possession in February 2003") *with* Compl. ¶ 76 ("Glock, Inc., based on its official corporate records, had *actual* knowledge at the time Jannuzzo left his employment that the gun had been loaned to him").

[13] *See* Ex. C, Order on Def.'s Mots. at 2.

[14] *Cf.* Compl. ¶ 56 n.4 (alleging that Jannuzzo had to be tracked through four countries before he was apprehended).  *See also* Ex. A, Order on Def.'s Mot. for New Trial at 2 ("Defendant fled the country, eventually being located in Amsterdam.").

[15] *Cf.* Compl. ¶ 10 (alleging that Jannuzzo was incarcerated from December 2009 to July 2013); Ex. A, Order on Def.'s Mot. for New Trial at 2 ("Defendant was

granted the extradition request in May 2011,[16] and Jannuzzo was returned to Cobb County, where his bond had been revoked and he was therefore returned to jail.

*The Superior Court Rejected Jannuzzo's Statute of Limitations Arguments*

Upon Jannuzzo's return, the trial court conducted a final hearing on all outstanding motions. Once again, Jannuzzo was present and represented by counsel.[17] On February 15, 2012, the court denied Jannuzzo's plea in bar, citing: (1) testimony and documents that showed Jannuzzo in 2005 had falsely told Glock's representatives that he did not have the LaFrance pistol and suggesting that Glock's paperwork was incorrect; and (2) exhibits that showed Glock had reported the pistol as "missing" after these representations from Jannuzzo.[18]

*Jannuzzo's Criminal Trial*

A Cobb County jury heard the evidence for and against Jannuzzo during a trial that lasted nine days and included testimony from eighteen witnesses. In addition to evidence regarding the LaFrance pistol, the State presented substantial evidence showing that Jannuzzo had conspired to steal money from Glock.

---

eventually extradited back to the United States by order of the Dutch court in May, 2011.").

[16] *See* Ex. A, Order on Def.'s Mot. For New Trial at 2.

[17] *See* Ex. C, Order on Def.'s Mots. at 2.

[18] *See id.* at 4-5.

1356934.1

Strikingly, the Complaint does not allege that Jannuzzo is innocent on either charge, because Jannuzzo cannot make such an allegation.

Instead, the Complaint attacks the credibility of Manown's testimony during a proffer in Manown's separate criminal case.[19] The Complaint misrepresents what happened during the proffer with incomplete quotations and by ignoring the ADA Timmons' extensive questioning of Manown. But more importantly, the Complaint avoids acknowledging that Manown also testified at Jannuzzo's trial and that Jannuzzo's counsel did not ask him a single question on cross examination.[20] The Complaint also fails to mention Karl Walter's testimony that Jannuzzo confessed to him that Jannuzzo stole at least $300,000 from Glock.[21]

Jannuzzo moved for a directed verdict at the close of the State's evidence and then moved again, at the close of all the evidence. Jannuzzo argued that the State had failed to prove Jannuzzo's false denial that he had the LaFrance pistol in 2005.[22] After lengthy hearings, the trial court held that "[b]ased upon the evidence

---

[19] *See* Compl. ¶¶ 63, 76-77, 81-85, 91.

[20] *See State v. Jannuzzo*, No. 09-9-2603, Trial Transcript ("Tr.") Vol. 4 at 585: 1-3, relevant excerpts are attached as Ex. G.

[21] *See* Ex. G, Tr. Vol. 7 at 1111-12; *see also* Ex. A, Order on Def.'s Mot. for New Trial at 5-6 (citing Walter's testimony as evidence of Jannuzzo's guilt).

[22] *See* Ex. G, Tr. Vol. 8 at 1262-63).

1356934.1

at trial, … the State had put forth sufficient evidence to raise issues of fact such that the case should proceed to the jury."[23]

Jannuzzo's counsel also "strenuously argued the statute of limitations to the jury."[24] In closing argument, Jannuzzo emphasized that the State had improperly indicted Jannuzzo for stealing the LaFrance pistol for the sole purpose of extending the statute of limitations.[25] Jannuzzo also argued that the entire prosecution was the result of Glock Sr. being angry with Jannuzzo and that "Glock spent a considerable, considerable amount of money so they could assist the prosecution in this case."[26] After five hours of deliberation, the jury convicted Jannuzzo.[27]

### *Jannuzzo's Post-Trial Motions*

Jannuzzo renewed his motion for directed verdict after the jury's decision, but the trial court rejected his statute of limitations arguments again:

> The issues of both venue and statute of limitations, in particular, were argued at length, and were specifically found by the Court to be issues for determination by the jury. Those issues were submitted to the jury for determination with instructions on the law. The jury considered those issues

---

[23] *State v. Jannuzzo*, No. 09-9-2603-49, Order on Def.'s Renewed Mot. for Directed Verdict at 1 (Mar. 30, 2012), a certified copy of which is attached hereto as Ex. H; Ex. G, Tr. Vol. 9 at 1482-85 (denying Jannuzzo's second directed verdict motion); *see also* Ex. A, Order on Def.'s Mot. for New Trial at 3.

[24] *Id.* at 13 (the court "fully instructed the jury" on statute of limitations).

[25] Ex. G, Tr. Vol. 9 at 1661-62.

[26] *Id*. at 1668.

[27] Compl. ¶ 141.

1356934.1

and returned a verdict adverse to Defendant, finding him guilty on both counts of the indictment.[28]

The trial court rejected the statute of limitations argument for a fourth time on Jannuzzo's motion for new trial. In that order, the court surveyed the trial evidence, including testimony from Glock's former General Counsel Kevin Connor, who testified that Jannuzzo told him in 2003 that "he had the LaFrance [pistol], and (somewhat vaguely) indicated that it would be returned."[29] But the court held that Glock's subsequent 2005 missing pistol report to the Smyrna Police Department created a factual dispute that would allow a reasonable jury to conclude that Glock did not actually know that Jannuzzo still had the pistol until after his 2007 arrest.[30] After denying the new trial motion, the court sentenced Jannuzzo to serve seven years in prison.

On July 9, 2013, the Court of Appeals reversed Jannuzzo's convictions for failure to prove that the prosecution was timely. The DA filed a *nolle prosequi* on July 15, 2013, representing that there was no further crime to prosecute in light of the ruling by the Court of Appeals on the statute of limitations.[31]

---

[28] Ex. H, Order on Def.'s Renewed Mot. For Directed Verdict at 2; *see also* Ex. A, Order on Def.'s Mot. for New Trial at 3-4.

[29] *Id.* at 12.

[30] Ex. A, Order on Def.'s Mot. for New Trial at 12.

[31] Compl. ¶ 157.

1356934.1

## ARGUMENT AND CITATION OF AUTHORITY

The Court should dismiss Jannuzzo's Complaint with prejudice because he cannot allege facts to support the elements of his malicious prosecution, § 1983 and Georgia RICO claims. On critical points, the Complaint relies on conclusory allegations that the defendants conspired or acted without probable cause. The Complaint similarly relies on statutory labels and formulations, without pleading supporting facts to show which defendant committed what conduct in supposed violation of those statutes. These tactics do not satisfy Rule 8, let alone Rule 9(b)'s requirement to plead any allegations of fraud with particularity.

In addition to the Complaint, the Court can and should take judicial notice of the Cobb County Superior Court's orders and other public filings in *State v. Jannuzzo*.[32] *Davis v. Williams Communications, Inc.* holds that "a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

---

[32] *See* Fed. R. Evid. 201(d).

1356934.1

10

questioned."[33]  The Court similarly can consider documents referenced in the

Complaint that are central to Jannuzzo's claims on this motion to dismiss.[34]

## I.    The Court Should Dismiss the Malicious Prosecution Claim.

### A.    Jannuzzo Has No Claim for Malicious Prosecution Because He Committed the Crimes For Which He Was Prosecuted.

In *Wal-Mart Stores, Inc. v. Blackford*, the Georgia Supreme Court held that

proof a criminal defendant actually committed the charged crime precludes a

subsequent claim for malicious prosecution.  The Court explained that "while an

innocent person prosecuted with malice and without probable cause has suffered

damage for which the tort provides redress, conversely, ***a person who has been***

***arrested for a crime which he committed has suffered no harm***."[35]  Following the

Supreme Court's answer to that certified question, the defendant Wal-Mart won

summary judgment because discovery confirmed the plaintiff had passed the bad

check for which she was prosecuted.  Even though the State dropped its

---

[33] 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003); *Halmos v. Bombardier Aero. Corp.,* 404 F. App'x 376, 377–78 (11th Cir. 2010) (district court may properly consider matters of public record on motion to dismiss).

[34] *SFM Hdgs., Ltd. v. Banc of Am. Sec.,* 600 F.3d 1334, 1337 (11th Cir. 2010).

[35] 264 Ga. 612, 613, 449 S.E.2d 293, 294-95 (1994) (emphasis added).

1356934.1

11

prosecution, Georgia law foreclosed any malicious prosecution claim because the plaintiff had committed the offense.[36]

This case law is fatal to Jannuzzo's claims because the Complaint never alleges that Jannuzzo did not commit the charged conduct.  Moreover, the Georgia Court of Appeals held that the State proved Jannuzzo stole the LaFrance pistol:

> ***The State produced evidence sufficient to establish Jannuzzo's theft by conversion of the LaFrance pistol*** by showing: (1) that Jannuzzo lawfully obtained the pistol owned by his employer, Glock, under an agreement that he could keep possession of and use the pistol only for purposes related to his employment, and therefore only so long as he remained employed by Glock; and (2) that Jannuzzo violated this agreement and knowingly converted the pistol to his own use when he kept the pistol, and did not to return it to Glock, at the time he left his employment with Glock in February 2003.[37]

Because the State had evidence proving—beyond a reasonable doubt—that Jannuzzo committed the crime, he has suffered no cognizable harm and can obtain no redress for malicious prosecution under Georgia law.  In the words of the *Blackford* court, "a criminal fortunate enough to escape conviction should rest content with his good luck and not belabor one who suspected his guilt and acted

---

[36] *Blackford v. Wal-Mart Stores, Inc.*, 912 F. Supp. 537 (S.D. Ga. 1996).
[37] *Jannuzzo*, 322 Ga. App. at 764, 746 S.E.2d at 241 (emphasis added).

1356934.1

accordingly."[38]  Because Jannuzzo cannot allege he was prosecuted for a crime he did not actually commit, the Court should dismiss all of his claims.

### B.    Jannuzzo Cannot Plead or Prove That the Prosecution Terminated in His Favor.

The appellate court's confirmation that Jannuzzo stole the LaFrance pistol similarly prevents Jannuzzo from alleging that the prosecution terminated in his favor as Georgia law requires.[39]  The favorable termination requirement reflects the law's distrust of malicious prosecution claims and a policy preference for ensuring that citizens report crimes.[40]  The Restatement (Second) of Torts recites the majority rule that "[p]roceedings are 'terminated in favor of the accused,' … only when their final disposition is such as to indicate the innocence of the accused."[41] Rather than suggest Jannuzzo was innocent, the Court of Appeals confirmed that

---

[38] *Blackford*, 912 F. at 540 (quoting 52 Am. Jur.2d Mal. Prosec. § 76 (1970)).

[39] *See Monroe v. Sigler*, 256 Ga. 759, 761, 353 S.E.2d 23, 25 (1987) ("A criminal defendant is precluded from bringing a subsequent action of malicious prosecution unless the prosecution has terminated in his favor."); *see also Heflin v. Goodman*, 288 Ga. App. 454, 455-56, 654 S.E.2d 417, 419 (2007) (same).

[40] *Allen v. Wometco Cable TV of Clayton Cnty., Inc.,* 198 Ga. App. 103, 104, 400 S.E.2d 362, 363 (1990) (Georgia courts have "always distrusted malicious prosecution actions, and have retained a strong hand over them.").

[41] Restatement (Second) of. Torts § 660 cmt. a (1977); *see also Cohen v. Corwin*, 980 So. 2d 1153, 1155 (Fla. Dist Ct. App. 2008) ("Where dismissal is on technical grounds, for procedural reasons, or any other reason not inconsistent with the guilt of the accused, it does not constitute a favorable termination." (internal quotation marks omitted)); *Davidson v. Castner-Knott Dry Goods Co.*, 202 S.W.3d 597, 605 (Ky. Ct. App. 2006) (same).

the State proved he committed the crimes for which the jury convicted him.

After the Georgia Supreme Court's decision in *Blackford*, the Georgia courts cannot accept Jannuzzo's statute of limitations victory cannot qualify as a "favorable termination."[42] That result would be in consistent with other jurisdictions that reject the idea that a defendant who escapes prosecution on limitations grounds can satisfy the favorable termination requirement. In *Parrish v. Marquis*, for instance, the Tennessee Supreme Court rejected such a claim because "the almost universal rule is that dismissal of a complaint on procedural grounds that do not reflect on the merits is not a 'favorable termination' for a malicious prosecution claim."[43]

Nor can Jannuzzo establish a favorable termination by pointing to the DA's

_____

[42] *See also* Part I(C)(1), *infra* citing Georgia cases holding that a guilty verdict conclusively establishes probable cause to defeat a malicious prosecution claim.
[43] 172 S.W.3d 526, 532 (Tenn. 2005), *overruled on other grounds by Himmelfarb v. Allain*, 380 S.W.3d 35 (Tenn. 2012); *see also Craig v. City of Yazoo*, 984 F. Supp. 2d 616, 629(S.D. Miss. 2013) ( a ruling based on the statute of limitations "says nothing of [the plaintiff's] innocence" and is merely a procedural bar that does not show a favorable termination); *JSJ Ltd. P'ship v. Merbhan*, 205 Cal. App. 4th 1512, 1525 (2012) (listing the expiration of the statute of limitations as an example of technical or procedural grounds that do not constitute favorable termination for abuse of civil process claim); *Lucas v. District of Columbia*, 505 F. Supp. 2d 122, 127 (D.D.C. 2007) ("[N]o favorable termination is found where the earlier action is dismissed on the ground of the statute of limitations, or laches, because these dispositions do not reflect on the merits of the underlying claim.") (quotation marks omitted).

filing of a *nolle prosequi* on the same statute of limitations grounds.[44]  No Georgia case holds that a *nolle prosequi* standing alone constitutes a favorable termination. Instead, the case law confirms that the Georgia courts examine the State's reasons for dropping the prosecution.[45]  Because the *nolle prosequi* at issue here confirms that Jannuzzo escaped his prosecution on limitations grounds—rather than any suggestion of innocence—he cannot plead a favorable termination.

### C.    Jannuzzo Cannot Plead or Prove an Absence of Probable Cause.

The gravamen of a malicious prosecution claim is the absence of probable cause.  And as *Blackford* holds, the existence of probable cause depends on "whether the facts as they appeared at the time of instituting the prosecution were such as to lead a person of ordinary caution to entertain a belief that the accused was guilty of the offense charged."[46]  The Court should dismiss the Complaint because the record prevents Jannuzzo from alleging facts to suggest there was no probable cause.

---

[44] *See* Compl. ¶¶ 142-44, 157.

[45] *See Gray v. Dental One Assocs.*, 269 Ga. App. 888, 889, 605 S.E.2d 366, 367 (2004) (rejecting malicious prosecution claim where the plaintiff obtained a *nolle prosequi* by compromising the underlying criminal claim); *McDaniel v. Yearwood*, No. 2:11-cv-00165, 2012 WL 526078, at *14 (N.D. Ga. Feb. 16, 2012) (no favorable termination from *nolle prosequi* stating that charges were dismissed because the plaintiff completed a pretrial program).

[46] *Blackford,* 264 Ga. at 613–14, 449 S.E.2d at 294.

1356934.1

15

### 1. The Jury's Verdict Conclusively Establishes Probable Cause.

More than a century ago, the Georgia Supreme Court held that there can be no claim for malicious prosecution if the plaintiff was convicted in the underlying criminal trial, even if that conviction is subsequently reversed on appeal. In *Georgia Loan & Trust Co v. Johnston*, the Supreme Court re-affirmed that "the general rule is that, if there be a judgment of conviction in the criminal prosecution … in a court having jurisdiction of the parties and the subject-matter, such judgment, although subsequently reversed by an appellate tribunal, is conclusive evidence of probable cause for the prosecution … complained of."[47] It is not enough, therefore, for Jannuzzo to allege that the Court of Appeals reversed the jury's verdict because, "[p]robable cause does not require the same type of specific evidence of each element of the offense that would be needed to support a conviction."[48] In the words of the Georgia Supreme Court, a conviction reversed

---

[47] 116 Ga. 628, 631, 43 S.E. 27, 28 (1902); *see also Hartshorn v. Smith*, 104 Ga. 235, 239, 30 S.E. 666, 668 (1898) ("As evidence of probable cause, a conviction by verdict and judgment is as convincing, and therefore ought in law to be as high and conclusive, although vacated by appeal, as if it stood unreversed and in full force."); *Condon v. Vickery*, 270 Ga. App. 322, 324, 606 S.E.2d 336, 339 (2004).
[48] *Osborne v. Am. Multi-Cinema, Inc.,* 348 F. App'x 535, 538 (11th Cir. 2009) (*quoting Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003)).

on appeal, "does not show, nor can it be shown against the facts of the first verdict and judgment, that there was no just and probable cause of accusation."[49]

The law permits an exception to this rule if the jury's conviction was obtained by "fraud, perjury or subornation."[50]  But no matter what the Complaint alleges before trial, it has very little to say about the evidence at trial.  Nor can the Complaint allege that the jury did not have a full and fair opportunity to consider Jannuzzo's statute of limitations arguments.  The trial court's orders confirm that Jannuzzo developed those themes at trial and that his counsel "strenuously" argued them to the jury.[51]  Similarly, Jannuzzo cross-examined the State's witnesses regarding Glock's participation in the prosecution. And Jannuzzo argued those points—right down to the supposedly sinister implications of a Glock logo on the DA's trial binder—to the jury as well.[52]

Although Jannuzzo may seek to re-litigate those issues here, the Complaint makes no allegation that the jury's verdict was tainted by fraud, perjury or corruption on any of these points.  Without those allegations—pled with specificity

---

[49] *Georgia Loan & Trust*, 116 Ga. at 631, 43 S.E. at 28.

[50] *Id.* at 631, 43 S.E. at 28; *Condon*, 270 Ga. App. at 324, 606 S.E.2d at 339.

[51] *See* Ex. A, Order on Def.'s Mot. for New Trial at 13.

[52] *Compare* Compl. at 1-2 & n.1 (complaining about the DA's binder) *with* Ex. G, Tr. Vol. 9 at 1678-79 (closing argument that the appearance of the Glock logo on the prosecutor's binder should "disgust" the jury).  *See also id.* at 1667-77 (repeating the same outsourced prosecution theme).

under Rule 9(b) and certified under Rule 11—Jannuzzo cannot overcome the jury's guilty verdict, and the Court should dismiss his claims.

### 2. The Trial Court's Repeated Denial of Jannuzzo's Directed Verdict Motions Conclusively Establishes Probable Cause.

Georgia law similarly precludes a malicious prosecution claim because the trial court denied Jannuzzo's directed verdict motions. In *Monroe v. Sigler*, the Georgia Supreme Court held that the trial court's decision to deny the defendant's motion for directed verdict "constitute[s] a binding determination of the existence of probable cause" that precludes any subsequent claim for malicious prosecution.[53] The Court held that must be so because the "quantum of evidence" required to deny a directed verdict motion "is substantially greater than mere probable cause."[54] Like the jury's verdict, the trial court's decision that the evidence is enough "to support a conviction (that is, is sufficient to enable a rational trier of fact to find each and every element of the guilt of the accused beyond a reasonable doubt)," conclusively establishes probable cause.[55]

*Monroe* bars Jannuzzo's claim because the trial court denied his motions for directed verdict: (1) at the close of the State's evidence; (2) following the

---

[53] 256 Ga. 759, 761, 353 S.E.2d 23, 25 (1987).

[54] *Id.*

[55] *Id.; see also Akins v. Warren*, 258 Ga. 853, 375 S.E.2d 605 (1989).

conclusion of all the evidence; and (3) after the jury rendered its verdict. The trial court cataloged those motions—as well as the substantial time the court devoted to hearing argument on Jannuzzo's statute of limitations arguments—in a March 30, 2012 Order.[56] The court rejected the limitations arguments again when it denied Jannuzzo's motion for new trial.[57] Under *Monroe*, therefore, Jannuzzo cannot allege the absence of probable cause for his prosecution.

### 3. Jannuzzo Cannot Plead an Absence of Probable Cause in the Face of the Trial Court Record.

Even without the jury's conviction and the trial court's directed verdict rulings, the record prevents Jannuzzo from alleging the facts necessary to plead an absence of probable cause.[58] Once again, the Complaint never alleges that Jannuzzo did not convert the LaFrance pistol or conspire to steal money from Glock and its affiliates. Nor does the Complaint allege that the defendants had no basis to believe Jannuzzo committed this conduct. Instead, the Complaint alleges there was no cause to believe that Jannuzzo's prosecution was timely.

---

[56] *See* Ex. H, Order on Def.'s Renewed Mot. for Directed Verdict; *see also* Ex. G, Tr. Vol. 8 at 1299-303 (denying Jannuzzo's first motion for directed verdict) and Ex. G, Tr. Vol. 9 at 1482-85 (denying Jannuzzo's second directed verdict motion).

[57] *See* Ex. A, Order on Def.'s Mot. for New Trial at 10-14.

[58] *See* O.C.G.A. § 51-7-43 ("Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused.").

1356934.1

That is not enough to negate probable cause because, in *Pickens v. Hollowell*, the Eleventh Circuit held that Georgia police officers had probable cause to arrest a defendant on an otherwise valid warrant ***even when they knew the statute of limitations had expired***.[59]  In evaluating qualified immunity, the Eleventh Circuit held that "[t]he ultimate success of [plaintiff's] statute of limitations defense changes nothing" and "does not mean that her arrest was not based upon arguable probable cause, or even probable cause."[60]  The result was the same in *Sands v. McCormick*, where the plaintiff alleged that an officer filed a criminal complaint despite "knowing that the statute of limitations had expired."[61] The Third Circuit affirmed a dismissal of that claim on the merits (rather than on qualified immunity) because the case was built on the "faulty premise that the statute of limitations is a relevant consideration at the time a police officer files charges."[62]  Until the trial court quashed the criminal charge, the *Sands* Court held

---

[59] 59 F.3d 1203, 1206-07 (11th Cir. 1995).

[60] *Id*. at 1208.

[61] 502 F.3d 263, 266 (3d Cir. 2007).

[62] *Id*. at 269; *see also Evans v. Nevada Cty. Sheriff's Dep't* No. 2:13-cv-01775-TLN-DAD, 2014 WL 6895569, at *11 (E.D. Cal. Dec. 8, 2014) (dismissing § 1983 complaint where the plaintiff argued that an expired statute of limitations nullified the probable cause); *Kitch v. City of Kirkland*, No. C11-823RAJ, 2012 WL 924345, at *9 (W.D. Wash. Mar. 19, 2012) (statute of limitations "has nothing to do with whether the defendant actually committed the crime, which is the relevant question to probable cause in a warrant application.").

1356934.1

20

that the "statute of limitations defense was undetermined and open for further consideration."[63]   Despite the slightly different context, *Pickens* and *Sands* prevent Jannuzzo from pleading the absence of probable cause merely because he eventually prevailed on the statute of limitations.

### a. The Additional Evidence Presented at the Plea in Bar Confirms Probable Cause.

The Complaint also acknowledges that the State presented additional evidence on the statute of limitations at the plea in bar.  The trial court relied on evidence that Jannuzzo falsely denied having the LaFrance pistol in 2005, including a September 9, 2005 e-mail in which Jannuzzo told Glock to look for records "back when the company knew where everything was,"[64]  Under *Monroe*, that pre-trial ruling constitutes *prima facie* evidence of probable cause and it should be conclusive because Jannuzzo was present, represented by counsel, and the hearing was conducted with the formalities of trial, including evidentiary objections and the right to cross examination.[65]

---

[63] *Sands*, 502 F.3d at 270.

[64]  Ex. D; *see also* Ex. C, Order on Def.'s Mots. at 4-5.

[65] 256 Ga. at 760, 353 S.E.2d at 25 (pre-trial rulings are *prima facie*, but not conclusive, evidence of probable cause because "a preliminary hearing is substantially less formal than a trial, and the accused often are not represented by counsel").

1356934.1

21

In any event, the evidence presented at the hearing prevents Jannuzzo from pleading an absence of probable cause.[66]  The Complaint acknowledges Jannuzzo's 2005 e-mail, but only to disparage the State's attempt to admit it as a company record.[67]  The trial court's refusal to admit this evidence at trial may have cost the State its conviction,[68] but Jannuzzo cannot pursue a malicious prosecution claim by pretending that this evidence did not exist or did not demonstrate probable cause. Because the defendants—and the State—knew that Jannuzzo had falsely denied having the LaFrance pistol in 2005, the defendants had probable cause to believe his prosecution was timely.

### b. Jannuzzo's May 2008 Indictment for RICO Conspiracy Was Timely.

In addition, there was certainly probable cause to believe that Jannuzzo could be timely prosecuted under Georgia RICO when he was first indicted in May 2008.  In *Wooten v. State*, the Georgia Court of Appeals held that a superseding indictment is not barred by the statute of limitations as long as "(i) the original indictment is still pending; (ii) the original indictment was timely; and (iii) the

---

[66] *See State v. Jannuzzo*, No. 08-9-2193-49, Transcript of Plea in Bar Hearing at 24-31, 48 (June 16, 2009), an excerpt of which is attached hereto as Ex. I.

[67] *See* Compl. ¶ 132 & n.18.

[68] *See Jannuzzo*, 322 Ga. App. at 763, 746 S.E.2d at 241 ("Contrary to the allegation in the indictment, no evidence showed that Jannuzzo ever denied having possession of the LaFrance pistol after he left his employment with Glock.").

1356934.1

superseding indictment does not broaden or substantially amend the original charges."[69]  Because the 2008 indictment was still pending at the time of Jannuzzo's 2009 indictment and the superseding indictment only added one predicate act to the existing RICO charge,[70] the Georgia courts should have used the 2008 indictment to evaluate Jannuzzo's limitations arguments.

Without that error, Jannuzzo would still be sitting in jail today because the Complaint admits—and the May 2008 indictment specifically alleges—that Glock did not discover Jannuzzo's financial crimes until Manown's October 2003 confession.[71]  Because the May 2008 indictment came within five years of that discovery, Jannuzzo's 2008 indictment on the RICO charge was timely under

---

[69] 240 Ga. App. 725, 726, 524 S.E.2d 776, 778 (1999).

[70] *See, e.g., State v. Jannuzzo*, No. 08-9-2193-49, Order on Def.'s Mot. to Require the State to Elect Upon Which Indictment It Will Proceed (Sept. 25, 2009), a certified copy of which is attached hereto as Ex. J; Compl. ¶¶ 93-95 (alleging that Jannuzzo was indicted in 2008 and then re-indicted in 2009).

[71] *See id.* ¶¶ 63, 76 (alleging that Glock learned of Manown's and Jannuzzo's "improprieties" once Manown confessed); Ex. E, 2008 Indictment at Part B ¶ 4 (alleging that "Mr. Gaston Glock and the companies in the Glock Group first became aware of some of the illegal acts of **Paul F. Jannuzzo** and Peter S. Manown (Manown) in October, 2003 when Peter S. Manown, a separately indicted co-conspirator, gave a confession to a representative of Glock, Inc."); *see also* Ex. C, Order on Def.'s Mots. at 9 (pre-trial evidence showed that the victim had no knowledge until Manown confessed in October 2003).

1356934.1

O.C.G.A. § 16-14-8, without regard to Jannuzzo's theft of the LaFrance pistol.[72]

Even though the Court of Appeals did not consider this point before reversing

Jannuzzo's conviction, the defendants had every reason to believe that the May

2008 indictment's RICO charge was timely.  And as long as there was probable

cause on one of the indictment's charges, Jannuzzo cannot state a claim for

malicious prosecution.[73]

**D.     The Court Should Dismiss the Malicious Prosecution Claim
        Against Defendant John Renzulli.**

Finally, the Court should dismiss any malicious prosecution claim against

Renzulli because the Complaint does not allege that he had any personal malice

towards Jannuzzo.  Instead, the Complaint alleges that Renzulli's conduct was

taken in his capacity as an agent for Glock Sr., Glock, Inc. or Consultinvest, Inc.[74]

Under the Georgia Court of Appeals decision in *Perry v. Brooks*, agents acting

---

[72] *See Jannuzzo*, 322 Ga. App. at 765, 746 S.E.2d at 765 (presuming that the indictment sufficiently invoked tolling under O.C.G.A. § 17-3-2(2)); *see also* Ex. E, 2008 Indictment at Part B ¶ 6 (invoking the tolling statute); *Adams v. State*, 231 Ga. App. 279, 282-83, 499 S.E.2d 105, 109 (1998) (applying tolling provision to Georgia RICO indictment).

[73] *See Remeneski v. Klinakis*, 222 Ga. App. 12, 15, 473 S.E.2d 223, 227 (1996) ("[a] finding of probable cause as to one related offense arising from the same transaction is a binding determination that there was probable cause for all related charges arising from the same transaction or occurrence"); *Day Realty Assocs., Inc. v. McMillan*, 247 Ga. 561, 562, 277 S.E.2d 663, 664 (1981) (same).

[74] *See* Compl. ¶¶ 2, 79-80.

1356934.1

solely in representative capacities are not liable for malicious prosecution.[75] Because that is all the Complaint alleges against Renzulli, the Court should dismiss any malicious prosecution claim against him.

## II.   Jannuzzo Cannot State a Claim Under 42 U.S.C. § 1983.

### A.   Jannuzzo's Failure to Allege a Malicious Prosecution Claim Precludes a § 1983 Claim on the Same Theory.

Jannuzzo's failure to allege the elements of a Georgia malicious prosecution claim also defeats his § 1983 claim because *Grider v. City of Auburn* holds that a plaintiff must plead and prove "the elements of the common law tort of malicious prosecution," as well as a constitutional deprivation.[76]  Thus, Jannuzzo's inability to plead any cognizable damages, the absence of probable cause, or a favorable termination of his prosecution under Georgia law bars his federal claim as well. [77]

### B.   Jannuzzo Cannot Allege that the Defendants Acted Under Color of State Law.

The Court also should dismiss Jannuzzo's § 1983 claim because he has not sufficiently alleged that the defendants are state actors or that they acted "under color of" state law as § 1983 requires.  In *Harvey v. Harvey*, the Eleventh Circuit

---

[75] 175 Ga. App. 77, 79, 332 S.E.2d 375, 378 (1985).

[76] 618 F.3d 1240, 1256 (11th Cir. 2010).

[77] *Id*.; *see also* Part I(C)(3), *infra* (collecting authority for proposition that an expired limitations period does not nullify proximate cause in § 1983 cases).

1356934.1

25

held that "[o]nly in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."[78]  The Complaint attempts to satisfy that element by alleging: (1) joint action with state actors; and (2) the defendants performed an exclusively public function.[79]  But Jannuzzo cannot plead that the defendants committed state action on either theory.

### 1.  Jannuzzo Has Not Alleged a Plausible Conspiracy Between the Private Defendants and the State Actors.

For joint action between private persons and state actors to constitute action under state law pursuant to *Harvey*, the state actors must have joined a conspiracy knowing that its object was to violate the plaintiff's constitutional rights.[80] Moreover, Jannuzzo must allege that theory in compliance with the Federal Rules. Just as the plaintiffs in *Bell Atlantic Corp. v. Twombly* had to allege sufficient facts to plead a plausible antitrust conspiracy, so must Jannuzzo allege facts to support an alleged conspiracy to violate § 1983.[81]  To that end, *Harvey* holds that a plaintiff seeking to establish action under color of state law via a conspiracy with state officials must "plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private

---

[78] 949 F.2d 1127, 1130 (11th Cir. 1992).
[79] Compl. ¶ 166 .
[80] 949 F.2d at 1133.
[81] 550 U.S. 544, 553 (2007).

1356934.1

persons."[82]   These material facts must demonstrate that the private and state actors had "reached an understanding" to violate Jannuzzo's rights.[83]   Jannuzzo must therefore allege facts plausibly supporting the conclusion that the state actors (1) knew the statute of limitations had expired but (2) conspired with the defendants to prosecute him notwithstanding that knowledge.[84]

Jannuzzo cannot meet this standard.  *First*, Jannuzzo's bare allegations that state actors conspired with defendants are no more substantial than the "bare assertion of conspiracy" the Supreme Court rejected in *Twombly* and cannot support the conclusion that state actors knowingly conspired with defendants.[85] The best the Complaint can do is to allege the defendants and state actors "were always aware of the statute of limitations problems in the case against Jannuzzo" and that they identified arguments and developed evidence to prove the prosecution was timely.[86]   But that falls far short of alleging that the state actors

---

[82] 949 F.2d at 1133.

[83] *Id.*; *Brown v. Lewis,* 2009 WL 1457139, at *7 (M.D. Ga. May 22, 2009).

[84] *Twombly*, 550 U.S. at 556 (holding that to state a conspiracy claim, plaintiffs must allege "plausible grounds to infer an agreement" with unlawful aims).

[85] *Compare* Compl. ¶¶ 166 (alleging that defendants "operated in joint action with state actors such that they were at all relevant times acting under color of state law"), *and* 177 ("A common understanding existed between the Defendants and [state actors] to form an unlawful conspiracy …") *with Twombly*, 550 U.S. at 556.

[86] Compl. ¶¶ 94-99, 134.

1356934.1

27

agreed to join a conspiracy to prosecute Jannuzzo *knowing* that the statute of limitations had run.

Moreover, the Complaint contradicts any suggestion of conspiracy by alleging that the defendants deceived the state actors regarding the timeliness of Jannuzzo's prosecution. In that regard, the Complaint alleges that the defendants intentionally mislead and manipulated the state actors with false statute of limitations arguments.[87] Given these allegations, the Court cannot credit the Complaint's conclusion that the state actors knew the statute of limitations had expired but knowingly conspired to prosecute Jannuzzo anyway.[88]

*Second*, the Complaint cannot allege any facts to suggest that these state actors had any reason to conspire to violate Jannuzzo's constitutional rights. In *Twombly*, the Supreme Court held that Rule 12(b)(6) requires a dismissal where "an obvious alternative" explained the defendants' alleged misconduct and made

---

[87] *See id.* ¶¶ 69, 76 & 95 (alleging that Glock knew Jannuzzo's prosecution was time barred by late 2007 or early 2008); *id.* ¶¶ 94-100 (alleging that the defendants duped or overwhelmed the DA with "intentionally misleading" analysis of the statute of limitations arguments and that Butters accepted false statute of limitations analysis from the defendants); *id.* ¶¶ 69 & 73 (alleging that defendants manipulated and controlled the state actors).

[88] *Twombly*, 550 U.S. at 556.

1356934.1

28

the plaintiffs' allegations of an antitrust conspiracy implausible.[89]  In this case, Jannuzzo similarly fails to account for the alternative that the state actors prosecuted him after seeing compelling evidence that he committed multiple thefts. That omission is striking in a Complaint that acknowledges that (1) two separate grand juries indicted Jannuzzo; (2) the trial court rejected Jannuzzo's plea in bar after taking evidence; and (3) the jury convicted Jannuzzo at trial.  Given these admissions—as well as the trial court's repeated rejection of Jannuzzo's statute of limitations argument—the Complaint cannot allege any plausible conspiracy to transform private conduct into action under color of state law.

### 2.  Jannuzzo Cannot Allege that the Defendants Performed a Public Function.

Jannuzzo also alleges that the private defendants are liable under § 1983 because they performed public functions.  In *Harvey*, the Eleventh Circuit held that "the public function test shows state action only when private actors are given powers (or perform functions) that are 'traditionally the *exclusive* prerogative of the State.'"[90]  The Court held that a private party's exercise of authority "co-

---

[89] *Id.* at 567; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009) (in light of "more likely explanations," discrimination did not plausibly cause constitutional injury).
[90] *Harvey*, 949 F.2d at 1131 (*quoting Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974)); *see also Higdon v. Smith*, 565 F. App'x 791, 792 (11th Cir. 2014) ("The public function test requires that the private party was performing a public

extensive with the state is irrelevant."[91]  Instead, the key to alleging that a private

defendant has acted under color of state law is the state's *exclusive* authority in the

relevant arena.[92]  And as *Harvey* observes, very few activities are exclusively

reserved to the states.[93]

Jannuzzo cannot allege a public function because the conduct alleged in the

Complaint does not fall within an arena that is traditionally and exclusively

reserved to the state.  The Complaint cannot allege that investigating and reporting

criminal activity is an activity reserved to the State because the law and public

policy encourage private victims to investigate and report crime to law

enforcement.[94]  Nor can the Complaint allege that prosecuting crime is an activity

exclusively reserved to the State.  In *Filarsky v. Delia*, the Supreme Court

canvassed the nation's rich history of relying on private prosecutions:

---

function that was traditionally the exclusive prerogative of the State.") (internal
quotation marks omitted)).

[91] *Harvey*, 949 F.2d at 1131.

[92] *Id.; see Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) ("That a private entity
performs a function which serves the public does not make its acts state action.").

[93] *Harvey*, 949 F.2d at 1131 (collecting authority).

[94] *See Blackford*, 264 Ga. at 613, 449 S.E.2d at 295; Dep't of Justice, Deputy
Attorney General's Memo regarding Individual Accountability for Corporate
Wrongdoing (Sept. 9, 2015), *available at*
http://www.justice.gov/dag/file/769036/download (encouraging corporations to
investigate and report individual wrongdoing); U.S.S.G. § 8B2.1(a)(1) (rewarding
"due diligence to prevent and detect criminal conduct").

At the time § 1983 was enacted, private lawyers were regularly engaged to conduct criminal prosecutions on behalf of the State ….  Abraham Lincoln himself accepted several such appointments.  In addition, private lawyers often assisted public prosecutors in significant cases.[95]

Georgia also has a long tradition of permitting private parties to assist in prosecutions.[96]  Before 1985, Georgia even permitted the victim or the victim's family to hire lawyers to prosecute crimes against them.[97]  The Complaint correctly points out that Georgia prohibited that practice in Georgia Uniform Rule of Superior Court 42.1.  But even that change confirms that prosecution is not the exclusive prerogative of the State because Georgia continues to permit private prosecutors that are not hired by the victim.[98]  Because the Complaint cannot allege

---

[95] 132 S. Ct. 1657, 1663 (2012) (citations omitted) (collecting authority).

[96] *Cf. Harvey*, 949 F.2d at 1132 (examining Georgia's statutes to determine whether civil commitment is exclusive prerogative of state).

[97] *See Rutledge v. State*, 245 Ga. 768, 769–70, 267S.E.2d 199, 200 (1980) (civil attorney retained by victim's family could participate in criminal trial as special prosecutor without running afoul of due process); *Brown v. State*, 242 Ga. 536, 250 S.E.2d 438 (1978) (participation in criminal trial of attorney retained by victim's family to bring subsequent civil litigation was not improper); *Woods v. State*, 240 Ga. 265, 270 (1977) (special prosecutor's participation in case was permitted, though he was retained by victim's family); *Jackson v. State*, 156 Ga. 842, 848, 120 S.E. 535, 538 (1923) (not improper for counsel employed by victim's family to assist prosecutor and make arguments in case).

[98] Ga. Uniform R. Superior C. 42.1.  To the extent the Complaint alleges any violation of Rule 42.1, the trial court ruled that Core was not a special prosecutor at Jannuzzo's criminal case.  *See* Ex. G, Tr. Vol. 2 at 23-24.

1356934.1

that the defendants exercised any authority exclusively reserved to the state, Jannuzzo cannot rely on the public function test to create § 1983 liability.

### 3.  Alternatively, the Defendants are Entitled to Qualified Immunity.

Alternatively, should this Court accept Jannuzzo's suggestion that defendants were performing a public function, they should be entitled to qualified immunity because Jannuzzo cannot plead or prove that the defendants "violated clearly established law based upon objective standards."[99]  As noted above, *Pickens v. Hollowell* held that the defendants had qualified immunity from a § 1983 claim even where they knew the statute of limitations had expired.[100]  Absent a subsequent decision that would have put the defendants on notice that they could not afford to make a mistake about the statute of limitations when they cooperated with law enforcement, qualified immunity bars Jannuzzo's § 1983 claim.

Moreover, in *Wilson v. Layne*, the U.S. Supreme Court held that qualified immunity is appropriate where the law is undeveloped and judges disagree over the correct result.[101]  Jannuzzo cannot overcome that obstacle because the Complaint acknowledges that the trial and appellate courts reached different conclusions on

---

[99] *Pickens*, 59 F.3d at 1205.

[100] *Id.*; *see also Dale v. McCord*, No. 2:13-cv-10031-SLB, 2014 WL 4926186, at *5 (N.D. Ala. Sept. 30, 2014) ("The fact that the statute of limitations may have run on this offense is irrelevant to the availability of qualified immunity.").

[101] 526 U.S. 603, 618 (1999).

1356934.1

the statute of limitations.[102]  Indeed, it was not until the Court of Appeals reversed

Jannuzzo's conviction that any court suggested his prosecution was untimely.

### C.   Jannuzzo Cannot Plead a § 1983 Claim Based on an Alleged Violation of the Fourteenth Amendment.

Following the Supreme Court's decision in *Albright v. Oliver*,[103] only the

Fourth Amendment can support a § 1983 malicious prosecution claim.  Jannuzzo

labels Count II and part of Count III as a "due process" violation, but ultimately he

complains about his arrest, prosecution, and incarceration.[104]  In other words, his

claim is one for unreasonable seizure, and this Court must therefore analyze it

under the Fourth Amendment.[105]  Accordingly, the Court should dismiss Counts II,

as well as Count III to the extent it alleges any due process violation.

### III.   Jannuzzo Cannot State a Georgia RICO Claim.

### A.   Jannuzzo's Civil RICO Claim is Time-Barred.

Jannuzzo's claims are untimely because the five-year statute of limitations

---

[102] *See* Compl. ¶¶ 121, 142.

[103] 510 U.S. 266, 271 (1994) (plurality opinion); *Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996).

[104] Compl. ¶ 175; *see also id.* ¶ 10 (describing Jannuzzo's "losses" and focusing on periods of incarceration).

[105] *Albright*, 510 U.S. at 274.

1356934.1

33

on a Georgia civil RICO claim begins to run when "the cause of action accrues,[106] which happens "when the plaintiff discovers, or reasonably should have discovered, that he has been injured and that his injury is part of a pattern."[107] The Georgia Court of Appeals has rejected the argument that the statute of limitations does not begin to run *in a civil case* until the alleged racketeering conduct terminates. Thus, the Georgia courts repeatedly have affirmed that the plaintiff's discovery of his injury—rather than the last alleged predicate act— triggers the statute of limitations in civil RICO cases.[108] The injury that starts the limitations period is not the underlying alleged wrongful conduct, but rather the impact of that

---

[106] O.C.G.A. § 16-14-8. Although the statute was recently amended, that change cannot revive Jannuzzo's claim because the effective date of the amendment was July 1, 2015, and nothing suggests the amendment was retrospective. *See McNeal Constr. Co. v. Wilson*, 271 Ga. 540, 543, 522 S.E.2d 222, 225 (1999).

[107] *Blalock v. Anneewakee*, 206 Ga. App. 676, 678, 426 S.E.2d 165, 167 (1992). In adopting the injury plus pattern rule, the Court of Appeals relied on *Bivens Gardens Office Bldg. v. Barnett Bank of Fla.,* 906 F.2d 1546, 1554–55 (11th Cir. 1990), which adopted that rule for civil claims under the federal RICO statute. *Rotella v. Wood*, 528 U.S. 549 (2000), later overruled *Bivens Gardens'* accrual rule for the federal RICO statute of limitations, but the Georgia Court of Appeals reaffirmed *Blalock'*s application of *Bivens Gardens* to the Georgia statute the following year. *S. Intermodal Logistics, Inc. v. D.J. Powers Co.*, 251 Ga. App. 865, 867–68 n.1, 555 S.E.2d 478, 480 n.1 (2001).

[108] *See, e.g., S. Intermodal Logistics, Inc. v. D.J. Powers Co.*, 10 F. Supp. 2d 1337, 1356 n.38 (S.D. Ga. 1998) (applying *Blalock* in a civil Georgia RICO action); *Cochran Mill Assocs. v. Stephens*, 286 Ga. App. 241, 248, 648 S.E.2d 764, 770 (2007) (citing *Blalock* for the proposition that the statute of limitations began to run when the plaintiffs began questioning the defendant's conduct).

1356934.1

conduct on the plaintiff.[109]

In *Frantz v. Walled*, the Eleventh Circuit held that a civil RICO claim accrued on the date the plaintiff was arrested because he knew, or should have known, of defendants' wrongdoing and his resulting injury at that time.[110] The Complaint similarly demonstrates that Jannuzzo knew of his alleged injury and any alleged pattern of racketeering when he was first indicted in May 2008. After all, the Complaint alleges that Glock always knew that Jannuzzo had the LaFrance pistol because Jannuzzo had told Glock's representative those facts shortly after his 2003 resignation.[111] The Complaint further alleges that those facts were critical to Jannuzzo's prosecution because they showed his prosecution for converting that pistol was time barred by the time of his 2008 indictment:

> No later than March 2003, Mr. Jannuzzo told Kevin Connor (an officer of Glock, Inc.) that he still had the gun. As a result, efforts to prosecute Jannuzzo under Georgia's four year statute of limitations for felonies plainly should have been barred.[112]

The Complaint, therefore, alleges facts that confirm Jannuzzo was aware of his

---

[109] *S. Intermodal Logistics, Inc.*, 251 Ga. App. at 869, 555 S.E.2d at 482.

[110] 513 F. App'x 815, 821 (11th Cir. 2013).

[111] Compl. ¶ 76.

[112] *Id.*; *see also id.* ¶ 95 ("Because Glock, Inc. had actual knowledge of the whereabouts of the gun at the time Jannuzzo left his employment, the statute of limitations had clearly expired at the time Jannuzzo was first indicted in May 2008 and re indicted in June 2009."); *id.* ¶ 126 (alleging that Connnor's 2003 conversation with Jannuzzo confirms the prosecution was time-barred).

injury and the defendants' alleged efforts to frame him when he was first indicted in May 2008 and then re-indicted in June 2009.[113]

Moreover, the Complaint alleges that the defendants targeted Jannuzzo (and others) to cover up a broader pattern of alleged racketeering activity that stretched back over several decades.  Paragraphs 47-53 allege that since Glock's 1985 incorporation, Glock Sr. and others "carried out a methodical, deliberate *pattern* and practice of conducting sham transactions *over a period of decades*."[114] Jannuzzo alleges that he was aware of that conduct because he was Glock, Inc.'s long-time general counsel and because he supervised an internal investigation by James Harper.[115]  Paragraph 55 alleges that upon his 2003 resignation, Jannuzzo told Glock Sr. that he knew about "substantial evidence of illegal activities within the Glock Group,"[116]  The Complaint also alleges that Glock Sr. used the defendants to manufacture Jannuzzo's prosecution to silence and discredit him.[117] In *Dorsey v. State*, the Georgia Supreme Court held that acts of racketeering

---

[113] Compl. ¶ 95 (acknowledging the May 2008 and June 2009 indictments).

[114] *Id.* ¶ 52 (emphasis added).

[115] *Id.* ¶¶ 54 & 57-59 (alleging that Jannuzzo knew about illegal activity allegedly discovered by James Harper).

[116] *Id.* ¶ 55.

[117] *Id.* ¶¶ 60-61 & 200-201 (alleging that the defendants conspired to discredit Jannuzzo to prevent the prosecution of Glock Sr. and Glock affiliates); *see also Dorsey v. State*, 279 Ga. 534, 541, 615 S.E.2d 512, 519 (2005).

1356934.1

36

committed to conceal earlier, different acts of racketeering activity are part of a single pattern under Georgia RICO.[118]  Thus, Jannuzzo's own allegations confirm that he knew about his injury and the alleged pattern of racketeering activity no later than his first indictment in May 2008.  Because Jannuzzo then waited more than seven years to file his RICO claims, those claims are time-barred.

## B.  Jannuzzo Cannot Convert a Malicious Prosecution Claim into a RICO Claim.

Jannuzzo cannot convert a malicious prosecution claim into a racketeering claim because malicious prosecution is not an act of racketeering activity.[119]  In the seminal case of *von Bulow v. von Bulow*, Claus von Bulow was prosecuted, but ultimately not convicted, for attempting to murder his wife Martha.[120]  When Martha's children brought a civil suit, von Bulow alleged that the children had planted evidence to frame him for the crime.[121]  The district court rejected von Bulow's attempt to add a federal RICO claim, holding that "malicious prosecution may not constitute a RICO predicate act."[122]  Over the following thirty years, the

---

[118] 279 Ga. at 541, 615 S.E.2d at 519.

[119] *See* O.C.G.A. § 16-14-3(8) (defining racketeering activity).

[120] 657 F. Supp. 1134, 1136 (S.D.N.Y. 1987).

[121] *Id.* at 1137.

[122] *Id.* at 1143 (citing *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267–68 (8th Cir. 1984)).

1356934.1

federal courts repeatedly have cited the *von Bulow* decision with approval.[123]  In

*United States v. Pendergraft*, for example, the Eleventh Circuit reversed RICO

convictions against defendants who had threatened to file a lawsuit using false

evidence because of deep "concern about transforming a State common-law

action" into an alleged crime, as happens "when parties attempt to graft a RICO

claim onto their claims for malicious prosecution."[124]

In *Brown v. State*, the Georgia Court of Appeals similarly confirmed that

Georgia law does not criminalize litigation conduct, holding that a defendant could

not be charged for conspiring to file a lawsuit against a witness who had

---

[123] *See, e.g., Nakahara v. Bal*, No. 97-civ-2027-DLC, 1998 WL 35123, at *8 (S.D.N.Y. Jan. 30, 1998) (allegations that the defendant had commenced and participated in criminal proceedings were at most, "an incipient claim for malicious prosecution" that failed to plead racketeering); *FindTheBest.com, Inc. v. Lumen View Tech., LLC*, 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014) (collecting authority that "that the filing of meritless litigation, or even malicious prosecution, is not a predicate RICO act"); *Ippolito v. Florida*, 824 F. Supp. 1562, 1575 (M.D. Fla. 1993) ("[T]he initiation of a law suit cannot constitute a predicate act, even if that law suit is malicious.") (citing *von Bulow*).

[124] 297 F.3d 1198, 1205–08 (11th Cir. 2002) (collecting authority including *von Bulow*); *see also Raney v. Allstate Insurance Co.,* 370 F.3d 1086, 1088 (11th Cir. 2004) (affirming dismissal of a civil RICO claim for alleged conspiracy to extort money with a series of malicious false lawsuits); *Auburn Med. Ctr., Inc. v. Andrus*, 9 F. Supp. 2d 1291, 1297 (M.D. Ala. 1998) (allegations of fraudulent litigation activity were "artfully pleaded claims for malicious prosecution" that "can not form the basis of a RICO claim.").

1356934.1

cooperated with law enforcement's prior efforts to prosecute him.[125] And

*Markowitz v. Weiland* further holds that a civil plaintiff cannot state a Georgia

RICO claim by alleging the defendant forced a witness to change his testimony by

threatening to file a lawsuit.[126]  Moreover, intentional torts do not constitute

racketeering activity; only violations of enumerated, substantive criminal laws

do.[127]  The Court should therefore reject Jannuzzo's attempt to convert his

disfavored malicious prosecution claim into a Georgia RICO action.

## C.   Jannuzzo Is Estopped to Deny That He Committed the Crimes Charged in the Indictment.

Even if the Court were to allow Jannuzzo to assert a RICO claim on these

facts, Jannuzzo's conviction at trial bars the claim.  O.C.G.A. § 16-14-6(e)

provides that a Georgia RICO conviction "shall estop the defendant in any

subsequent civil action or proceeding as to all matters proved in the criminal

proceeding."  The jury convicted Jannuzzo of conspiring to commit a pattern of

racketeering against Glock.  The Court of Appeals confirmed that the State proved

---

[125] 322 Ga. App. 446, 454–55, 745 S.E.2d 699, 706 (2013).

[126] 243 Ga. App. 151, 155, 532 S.E.2d 705, 709 (2000), *overruled on other grounds as Pollman v. Swan*, 289 Ga. 767, 767–68, 716 S.E.2d 191, 193 (2011).

[127] O.C.G.A. § 16-14-3(8)(A); *see also Mullen v. Nezhat*, 223 Ga. App. 278, 281, 477 S.E.2d 417, 419–20 (1996) (allegations amounting to a civil tort claim for battery did not sufficiently allege Georgia RICO predicate; plaintiff needed to allege facts amounting to criminal conduct).

1356934.1

Jannuzzo's theft of the LaFrance pistol. Its decision contains nothing suggesting that the State failed to prove that Jannuzzo committed the conduct charged under the Georgia RICO statute. Thus, while Jannuzzo may not be estopped from alleging the State's prosecution was untimely, his conviction nevertheless estops him from alleging that he did not conspire to commit a pattern of racketeering.[128] Without those allegations, Jannuzzo cannot allege any injury or damages on his RICO claims, and they should be dismissed.

**D.    Jannuzzo Cannot Plead That the Defendants' Alleged Racketeering Proximately Caused Him Any Injury.**

For the same reason, Jannuzzo cannot allege facts to show that the defendants proximately caused him any injury. O.C.G.A. § 16-14-6(c) requires a civil plaintiff to allege an injury "by reason of" the defendants' racketeering activity. It is not enough for the plaintiff to allege that an act of racketeering occurred and that he was injured, or that the racketeering was the "but for" cause of his injury, or even that the conduct made his injury foreseeable.[129] Instead, Jannuzzo must allege facts to show that his injury "was directly caused by any

---

[128] *Cf. Cox v. Mayan Lagoon Estates, Ltd*, 319 Ga. App. 101, 734 S.E.2d 883 (2012) (applying § 16-14-6(e) as specific rule that operates outside Georgia's general principles of *res judicata* and collateral estoppel).

[129] *Longino v. Bank of Ellijay*, 228 Ga. App. 37, 41, 491 S.E.2d 81, 85 (1997) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)).

1356934.1

40

RICO violation" [130] and that there is "a direct nexus between at least one of the predicate acts [alleged] and the injury [he] purportedly sustained."[131]  The Complaint does not remotely meet that burden because it does not even allege that Jannuzzo was innocent of the conduct charged in the indictment.

### E.     The Complaint Fails to Adequately Plead the Required Elements of a Georgia RICO Claim.

In any event, the Complaint's attempt to plead the defendants' violation of Georgia RICO falls far short of the governing pleading requirements.  After *Twombly* and *Iqbal*, it is not enough to make "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[132]  Moreover, Jannuzzo's RICO claims sound in fraud because they allege that the defendants knowingly falsified documents and made fraudulent statements about his activities. Having made those charges, Jannuzzo must allege the predicate acts with particularity in compliance with Federal Rule of Civil Procedure 9(b) and include the "who, what, where and when" for each act of fraudulent conduct.[133]  And he

---

[130] *Gentry v. VW of Am., Inc.*, 238 Ga. App. 785, 791, 521 S.E.2d 13, 19 (1999).

[131] *Nicholson v. Windham*, 257 Ga. App. 429, 430, 571 S.E.2d 466, 468 (2002).

[132] *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014).

[133] *Pullar v. General MD Group*, No. 1:12-CV-4063-TWT, 2013 WL 5284684, at *6 (N.D. Ga. Sept. 17, 2013) ("RICO claims are essentially a certain breed of fraud claims, [and] must be pled with an increased level of specificity.") (quoting *Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007)).

may not simply "lump[] together all of the defendants in their allegations of fraud," without making "specific allegations with respect to the separate defendants."[134]

## 1.  The Complaint Fails to Allege Witness Tampering.

Jannuzzo alleges that the defendants violated two statutes prohibiting tampering with or threatening witnesses:  (1) O.C.G.A. § 16-10-32(b), which criminalizes threatening or causing harm to another person with the intent of hindering a witness from testifying in an official proceeding, reporting crimes to law enforcement, seeking the arrest of another person for a crime, or seeking to institute a criminal prosecution; and (2) § 16-10-93(b)(1), which prohibits attempts to influence a witness to refrain from testifying or reporting a crime.[135]

### a.  The Complaint Does Not Allege That Any Defendant Tampered With Peter Manown's Testimony.

The Complaint alleges that when Renzulli took Manown's proffer, Renzulli argued with the witness and questioned his recollection.[136]  The Complaint alleges that that Renzulli's questions "tried to force Manown into implicating Jannuzzo into some of Manown's own activities," and the defendants tried to use restitution

---

[134] *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (affirming dismissal of RICO claim).

[135] *See* Compl. ¶ 204 (citing these statutes).

[136] *Id.* ¶ 80.

1356934.1

42

"to pressure Manown to tie Jannuzzo to his activities."[137]  But the Complaint

eventually reveals that the defendants wanted to make sure that Manown did not

receive favorable treatment that would undermine his credibility.[138]  Moreover, the

Complaint does not allege that any of Manown's testimony against Jannuzzo—

whether during the proffer or at trial—was false.  The Complaint, therefore, does

not allege any facts to suggest that any defendant tampered with Manown's

testimony, much less that they did so by force, intimidation, or threats.

### b. The Complaint Does Not Allege That Any Defendant Tampered with Kevin Connor's Testimony.

The Complaint also alleges that the defendants attempted to manipulate

Kevin Connor's testimony on the LaFrance pistol.  Although the Complaint does

not say so, Jannuzzo's counsel apparently solicited the affidavit to prevent

Jannuzzo's extradition from the Netherlands.[139]  Because that foreign proceeding is

not a "hearing or trial conducted by a ***court of this State*** or its political

subdivisions" or any other Georgia authority, it does not qualify as an official

proceeding under O.C.G.A. § 16-10-32 or § 16-10-93.[140]  In any event, the

---

[137] *Id.* ¶¶ 84, 89.
[138] *Id.* ¶ 90 & n.10.
[139] *See* Affidavit of Kevin Connor ¶ 2 (Feb. 15, 2010), attached hereto as Ex. K.
[140] *See* O.C.G.A. § 16-10-32(c)(1) (emphasis added) (defining an "official proceeding" for § 16-10-32(b) violations); *id.* § 16-10-93(b)(3)(A) (same).

1356934.1

43

Complaint quotes an e-mail that merely states that Renzulli "has counseled [Connor] on signing something he is not sure of."[141]  A suggestion that a witness be careful to tell the truth before signing an affidavit prepared by Jannuzzo's counsel does not constitute witness intimidation or tampering.[142]

### 2. The Complaint Fails to Allege Adequately Tampering With Other Evidence.

The Complaint provides even less support for its allegation that the defendants tampered with or destroyed physical evidence.  Although the Complaint alleges that "Defendants, through the Enterprise" violated O.C.G.A. § 16-10-93(b)(1)(B)(ii) and § 16-10-94(a), the Complaint never identifies what defendant committed that conduct and what physical evidence, object, documents or other records are at issue.  Instead, the Complaint alleges the naked conclusion that it "was part of the conspiracy" that "some of the co-conspirators" and "some of the Enterprise," aided and abetted "by each other and the other actors" would knowingly falsify unidentified documents.[143]  These formulaic recitations of

---

[141] *See* Compl. ¶ 124; E-mail from R. Core to J. Butters and K. Harrison (Feb. 2, 2010), a copy of which is attached hereto as Ex. L.

[142] *See, e.g.,* 18 U.S.C. § 1512(e) (providing a defense to witness tampering where defendant's sole intention was to encourage the other to testify truthfully).

[143] *See* Compl. ¶¶ 179-200, 202, 204.

1356934.1

44

statutory labels do not state a claim under *Twombly* and *Iqbal*.[144]

### 3.  The Complaint Fails to Allege Perjury.

Finally, the Complaint cryptically alleges that defendant Renzulli committed perjury at the plea in bar hearing "concerning a matter affecting his credibility."[145] That does not provide the defendants with Rule 8(a) notice of Jannuzzo's claim, and it fails to plead fraud with the particularity required by Rule 9(b).

### F.     The Complaint Fails to Allege a Violation of O.C.G.A. § 16-14-4(a).

The Complaint also fails to plead any facts that plausibly suggest that any defendant violated O.C.G.A. § 16-14-4(a) of the Georgia RICO statute, which makes it unlawful to acquire money through a pattern of racketeering activity. Although the Complaint alleges that conclusion, it never identifies what money or other property that any defendant acquired by virtue of the alleged racketeering activity.  Instead, the Complaint alleges that the racketeering resulted in Jannuzzo's prosecution and conviction, which harmed his reputation and caused mental distress.[146]  Even if that were true, Jannuzzo's allegations do not plausibly suggest that any defendant *received* anything in violation of § 16-14-4(a).  Because the

---

[144] *Twombly*, 555 U.S. at 555, 127 S. Ct. at 1965; *Iqbal*, 556 U.S. at 678, 127 S. Ct. at 1949.

[145] Compl. ¶ 121.

[146] *Id.* ¶ 207.

1356934.1

45

Complaint alleges no such gain, the Court should dismiss Count V.

**IV.    The Court Should Dismiss Jannuzzo's Punitive Damages Claim.**

Finally, the Court should dismiss Count VIII because a plaintiff cannot

maintain an independent claim for punitive damages without a viable claim for

compensatory damages.[147]

## CONCLUSION

Neither Georgia nor federal law allows a guilty person to press claims for

malicious prosecution.  If that were the law, the courts would be flooded with

litigation against prosecutors, police officers and crime victims every time a jury

failed to convict or an appellate court reversed a conviction.  The Court should

dismiss Jannuzzo's Complaint with prejudice.

---

[147] *Massey v. Kelly,* 742 F. Supp. 1156, 1158 (N.D. Ga. 1990).

1356934.1

This 21st day of September, 2015,

Respectfully submitted:

*/s/ Ronan P. Doherty*
John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
Ronan P. Doherty
Georgia Bar No. 224885
doherty@bmelaw.com
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
mykkeltvedt@bmelaw.com
Amanda Seals Bersinger
Georgia Bar  No. 502720
bersinger@bmelaw.com

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Tower
1201 W. Peachtree Street, N.W.
Atlanta, Georgia  30309
Tel. (404) 881-4100
Fax (404) 881-4111

*Counsel for Defendants Glock, Inc.,*
*Consultinvest, Inc., and John F. Renzulli*

1356934.1

47

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that the

foregoing **BRIEF IN SUPPORT OF DEFENDANTS GLOCK, INC.,**

**CONSULTINVEST, INC. AND JOHN F. RENZULLI'S MOTION TO**

**DISMISS** was prepared in Times New Roman, 14 point font, in accordance with

Local Rule 5.1.

This 21st day of September 2015.

*/s/Ronan P. Doherty*
Georgia Bar No. 224885
doherty@bmelaw.com

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel.  (404) 881-4100
Fax  (404) 881-4111

1356934.1

48

## CERTIFICATE OF SERVICE

I, hereby certify that on September 21, 2015, I electronically filed the

foregoing **BRIEF IN SUPPORT OF DEFENDANTS GLOCK, INC.,**

**CONSULTINVEST, INC. AND JOHN F. RENZULLI'S MOTION TO**

**DISMISS** with the Clerk of Court using the CM/ECF system, which will

automatically send e-mail notification of such filing to the attorneys of record for

all parties.

> */s/Ronan P. Doherty*
> Georgia Bar No. 224885
> doherty@bmelaw.com

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel.  (404) 881-4100
Fax  (404) 881-4111

1356934.1

49