IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PAUL F. JANNUZZO,

    Plaintiff,

      v.

GLOCK, INC., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:15-CV-2445-TWT

## OPINION AND ORDER

This is a malicious prosecution and RICO action. The Plaintiff Paul Jannuzzo alleges that the Defendants pursued a malicious criminal prosecution of him in retaliation for his falling out with Gaston Glock Sr. and to hide their criminal enterprise and racketeering activity. It is before the Court on the Defendants Glock, Inc., Consultinvest, Inc., and John Renzulli's Motion to Dismiss [Doc. 21], and the Defendant Robert Core's Motion to Dismiss [Doc. 22]. For the reasons set forth below, the Defendants Glock, Inc., Consultinvest, Inc., and John Renzulli's Motion to Dismiss [Doc. 21] is GRANTED and the Defendant Robert Core's Motion to Dismiss [Doc. 22] is GRANTED.

T:\ORDERS\15\Jannuzzo\mtdtwt.wpd

## I. Background

The Defendant Glock, Inc. is an incredibly profitable and well-known firearms company.[1] Gaston Glock Sr. – the founder and controller of the "Glock Group" – incorporated Glock, Inc. in Smyrna, Georgia in order to sell firearms in the United States.[2] The Defendant Consultinvest, Inc. is also part of the Glock Group.[3] The Plaintiff alleges that Glock Sr., along with his employees Charles Ewert and Peter Manown, carried out a lengthy racketeering scheme, which involved "a sequence of sham corporate acts that would repeatedly and falsely manipulate the stated ownership of Glock, Inc."[4] He also alleges that Glock Sr. disrespected corporate formalities by treating Glock, Inc. and other Glock entities as alter egos.[5]

The Plaintiff was the long-serving general counsel of Glock, Inc.[6] But in February 2003, he had a falling out with Glock Sr. that resulted in his resignation from the company.[7] He asserts that at the time of his resignation, James Harper, an attorney

---

[1]    Am. Compl. ¶ 43.

[2]    Id. ¶¶ 47, 53.

[3]    Id. ¶ 21.

[4]    Id. ¶ 49.

[5]    Id. ¶ 53.

[6]    Id. ¶ 54.

[7]    Id. ¶ 55.

hired by Glock Sr. to investigate a separate incident, discovered Glock Sr.'s racketeering scheme.[8] Once Harper realized that Glock Sr. was not going to cease his illegal activities, he resigned as well.[9] As general counsel, the Plaintiff had dealt with Harper's investigative team and its billing.[10] He alleges that, in addition to his falling out with Glock Sr., the Defendants orchestrated a malicious prosecution of him, Harper, and other former Glock, Inc. employees because they were aware of Glock Sr.'s racketeering scheme.[11] Moreover, he asserts that the Defendants wanted to discredit him because "Glock's criminal prosecution of Harper and his team . . . would ultimately be founded largely on allegations of over-billing."[12]

In October 2003, Peter Manown confessed to Glock Sr. and the Defendant John Renzulli, an attorney for Glock Sr., that he had stolen money from the Glock Group.[13] The confession also purportedly implicated the Plaintiff.[14] According to the Plaintiff, the Defendants then seized upon this confession to extract revenge on him and other

---

[8]    Id. ¶ 57.

[9]    Id. ¶ 59.

[10]   Id. ¶ 58.

[11]   Id. ¶ 60.

[12]   Id. ¶ 61.

[13]   Id. ¶ 63.

[14]   Id. ¶ 76.

former Glock employees.[15] Glock Sr. and Renzulli hired two attorneys – James Deichert and the Defendant Robert Core – to institute a prosecution of the Plaintiff.[16] In July 2007, Deichert filed a criminal complaint in the City of Smyrna, Georgia recommending the prosecution.[17] The case was then assigned to Detective Keith Harrison, and Glock Sr. put Core in charge of managing and controlling Harrison.[18] In October 2007, Renzulli took a proffer from Manown.[19] The Plaintiff alleges that throughout the proffer, Renzulli advocated for his client – Glock, Inc. – and attempted to steer Manown's testimony into implicating the Plaintiff in Manown's illegal activities.[20] He further asserts that Core and Renzulli used negotiations over Manown's restitution to coerce Manown into implicating him.[21]

The Plaintiff was indicted on June 11, 2009.[22] The indictment charged him with two counts: (1) theft by conversion, and (2) conspiracy to violate the Georgia

---

[15]   Id. ¶ 64.

[16]   Id. ¶¶ 64, 69.

[17]   Id. ¶ 67.

[18]   Id. ¶¶ 68-69.

[19]   Id. ¶ 77.

[20]   Id. ¶¶ 80, 84.

[21]   Id. ¶ 88.

[22]   Id. ¶ 100.

Racketeer Influenced and Corrupt Organizations Act ("RICO").[23] Count One of the indictment alleged that, in 1999, the Plaintiff had been given temporary custody of a Glock LaFrance Specialties .45 caliber semi-automatic pistol, and that he failed to return the pistol upon his resignation in February 2003.[24] Count Two alleged that the Plaintiff and Manown committed a pattern of racketeering activity, with one RICO predicate act being the conversion of the LaFrance pistol.[25]

The Plaintiff contends that throughout the prosecution the Defendants committed perjury, suppressed exculpatory evidence, and influenced witness testimony. Specifically, he asserts that Renzulli committed perjury "concerning a matter affecting his credibility" during the Plaintiff's plea in bar.[26] Moreover, Kevin Connor, Glock, Inc.'s new general counsel, sent Renzulli an unsigned draft of his affidavit, which allegedly contained exculpatory evidence regarding the theft by conversion charge.[27] Soon after Connor sent the affidavit, he was interviewed by

---

[23]   Id.

[24]   Id.

[25]   Id. ¶ 101.

[26]   Id. ¶ 121.

[27]   Id. ¶ 124.

Harrison.[28] Based on notes from the interview, the Plaintiff alleges that Connor told Harrison about a 2003 phone call from the Plaintiff in which the Plaintiff said he still had the LaFrance pistol.[29] Connor also purportedly told Robert Glock, his supervisor, about the phone call.[30] Thus, according to the Plaintiff, Glock, Inc. had actual knowledge that he had the LaFrance pistol in 2003, and, as a result, the four-year statute of limitations for his conversion charge had run prior to his 2009 indictment. Nevertheless, a few days after Harrison interviewed Connor, a "troublesome" paragraph was deleted from Connor's affidavit.[31]

At trial, the Plaintiff moved for a directed verdict at the close of the State's evidence and again at the close of all evidence.[32] The trial court denied both motions.[33] The Plaintiff was ultimately found guilty on both counts.[34]  He then appealed the jury verdict, and on July 9, 2013, the Georgia Court of Appeals reversed his conviction on

---

[28]     Id. ¶ 125.

[29]     Id.

[30]     Id.

[31]     Id. ¶ 128.

[32]     See Def. Glock, Inc., et al.'s Mot. to Dismiss, Ex. G, at 1482-85, Ex. H.

[33]     Id.

[34]     Am. Compl. ¶ 143; see also Jannuzzo v. State, 322 Ga. App. 760, 764-66 (2013).

both counts.[35] The Court of Appeals found "that the charges were clearly time-barred and that the State had failed to carry its burden to prove that [the Plaintiff] was indicted on either count within the applicable statutes of limitations."[36] After the reversal, the Cobb County District Attorney's Office filed a *nolle prosequi*, ending the criminal prosecution.[37] The Plaintiff brought suit against the Defendants on March 8, 2015.[38] He asserts that the Defendants orchestrated a scheme to maliciously prosecute him, and that this amounted to a violation of his constitutional rights, the Georgia malicious prosecution statute, and the Georgia RICO Act.[39] The Defendants move to dismiss.

## II. Legal Standard

---

[35]   Am. Compl. ¶¶ 143-44.

[36]   Id. ¶ 144.

[37]   Id. ¶ 159.

[38]   It should be noted that while the Plaintiff's Amended Complaint [Doc. 38] would normally moot the Defendants' initial Motions to Dismiss, because the Defendants incorporated by reference their original Motions to Dismiss in their Motion to Dismiss the Plaintiff's Amended Complaint [Doc. 42] and did not assert any new arguments in their second Motion, the Court will treat the Defendants' initial Motions to Dismiss as ripe for review.

[39]   In his Response Brief, the Plaintiff elected to no longer pursue his § 1983 due process claim. See Pl.'s Resp. Br. in Opp'n to Defs.' Mots. to Dismiss, at 40 n.102. Accordingly, the Plaintiff's § 1983 due process claim is dismissed.

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[40] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[41] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[42] Generally, notice pleading is all that is required for a valid complaint.[43] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[44]

### III. Discussion

### A. Malicious Prosecution Claims

---

[40]     Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[41]     Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[42]     See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[43]     See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).

[44]     See Erickson v. Pardus, 551 U.S. 89, 93 (2007).

As an initial matter, the parties disagree on whether the Court can consider the transcript from the Plaintiff's criminal trial when resolving the Defendants' Motions to Dismiss. The Plaintiff contends that it would be inappropriate for the Court to consider the transcript without converting the Motions to Dismiss into motions for summary judgment. The Court disagrees. It may consider the criminal trial transcript at the present stage because it is a matter of public record.[45] The Court will now turn to the Plaintiff's malicious prosecution claims.

The Plaintiff asserts a claim for malicious prosecution under both 42 U.S.C. § 1983 and state law.[46] In order to allege a § 1983 malicious prosecution claim, a plaintiff must prove both "the elements of the common law tort of malicious prosecution" and a constitutional deprivation.[47] Accordingly, the Court will first

---

[45]     See, e.g., Davis v. Williams Commc'ns Inc., 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003) (citing Bryant v. Avado Brands, Inc.,187 F.3d 1271, 1279-80 (11th Cir. 1999)); Armstrong v. Floyd Cnty., Ga., No. 4:13-CV-0050, 2013 WL 8711442, at *4 n.2 (S.D. Ga. Dec. 3, 2013).

[46]     The Plaintiff also asserts state law claims for malicious arrest and false imprisonment. But an action for false arrest is barred if an arrest is carried into prosecution; an action for malicious prosecution is then the exclusive remedy. See Perry v. Brooks, 175 Ga. App. 77, 78 (1985). Moreover, an action for false imprisonment fails if a plaintiff was arrested pursuant to a warrant. Lagroon v. Lawson, 328 Ga. App. 614, 620-21 (2014). Here, the Plaintiff fails to allege that he was not arrested pursuant to a warrant. Thus, the Plaintiff's claim for malicious arrest and false imprisonment fail as a matter of law.

[47]     Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010).

address whether the Plaintiff has adequately alleged a state law claim for malicious prosecution. Under Georgia law, the elements of a malicious prosecution claim include: "(1) a criminal prosecution; (2) instigated without probable cause; (3) with malice; (4) pursuant to a valid warrant, accusation, or summons; (5) that terminated in the plaintiff's favor; and (6) caused the plaintiff damage."[48] Importantly, malicious prosecution claims are not favored in Georgia.[49] "It is public policy to encourage citizens to bring to justice those who are apparently guilty."[50]

The Defendants argue, *inter alia*, that probable cause existed for the Plaintiff's prosecution. The issue of probable cause or not is the gravamen of a malicious prosecution claim.[51] "Probable cause is absent when the circumstances would satisfy a reasonable person that the accuser had no ground for proceeding except a desire to injure the accused."[52] Moreover, "if a reasonable person would have investigated to determine if probable cause existed prior to swearing out a warrant, then such failure

---

[48]    Dixon v. Krause, 333 Ga. App. 416, 419 (2015) (quoting McNeely v. Home Depot, Inc., 275 Ga. App. 480, 482 (2005)); see also O.C.G.A. § 51-7-40.

[49]    See Monroe, 256 Ga. at 761.

[50]    Id. (quoting Day Realty Assocs. v. McMillan, 247 Ga. 561, 562 (1981)).

[51]    Tate v. Holloway, 231 Ga. App. 831, 833 (1998) (quoting Wal-Mart Stores v. Blackford, 264 Ga. 612, 613 (1994)).

[52]    K-Mart Corp. v. Coker, 261 Ga. 745, 746 (1991).

to make an investigation may imply malice, as well as go to whether probable cause existed."[53] A guilty verdict is conclusive evidence of probable cause,[54] as is a denial of a criminal defendant's directed verdict.[55] However, both a guilty verdict and a denial of a directed verdict are not conclusive evidence if the plaintiff adequately alleges that the prosecution was tainted by fraud.[56]

Here, the Plaintiff's motions for directed verdict during his criminal trial were denied and the jury ultimately found him guilty. The Plaintiff, therefore, must adequately allege that the Defendants committed fraud. To that end, the Plaintiff alleges that the Defendants withheld exculpatory information during the criminal investigation and affirmatively misrepresented Glock, Inc.'s knowledge at trial.[57] Specifically, he alleges that the Defendants purposefully suppressed and manipulated

---

[53]   Fleming v. U-Haul Co. of Ga., 246 Ga. App. 681, 684 (2000).

[54]   See Condon v. Vickery, 270 Ga. App. 322, 324 (2004).

[55]   See Monroe v. Sigler, 256 Ga. 759, 761 (1987).

[56]   See Wolf Camera, Inc. v. Royter, 253 Ga. App. 254, 258 (2002) (holding that because there was evidence that the defendants acted in unison to frame the plaintiff, the denial of the plaintiff's directed verdict is not conclusive evidence of probable cause); Georgia Loan & Trust Co. v. Johnston, 116 Ga. 628 (1902) (holding that "[c]ases in which the judgment in the original action is obtained by fraud, perjury, or subornation are excepted from the . . . general rule" that a guilty verdict is conclusive evidence of probable cause).

[57]   Am. Compl. ¶¶ 123, 125-28, 130.

the testimony of Kevin Connor,[58] and that they failed to investigate a potentially exculpatory witness, Robert Glock.[59] However, as the Defendants point out – correctly – Connor testified at the criminal trial that Jannuzzo called him in 2003 about the LaFrance pistol and that he told Robert Glock about the phone call.[60] Moreover, Glock, Inc.'s records regarding the whereabouts of the LaFrance pistol were put into evidence.[61] Thus, evidence about Robert Glock and Glock, Inc.'s knowledge was not withheld from the jury. And, notably, the Plaintiff does not allege that any trial witnesses committed perjury regarding Glock, Inc.'s knowledge. In sum, this undermines the Plaintiff's argument that the Defendants concealed exculpatory evidence or intentionally misrepresented Glock, Inc.'s knowledge.

To be sure, in the cases cited by the Plaintiff in which a court held that the denial of a directed verdict during the plaintiff's criminal case did not foreclose his malicious prosecution claim, there was evidence that the defendants withheld

---

[58]    Id. ¶ 123.

[59]    Id. ¶ 130.

[60]    Def. Glock, Inc., et al.'s Reply Br. in Supp. of Defs.' Mot. to Dismiss, Ex. M, at 1329-30.

[61]    See Jannuzzo v. State, 322 Ga. App. 760, 764 (2013) ("In compliance with federal regulation, Glock kept written records of the whereabouts of every gun it owned and loaned, and the records showed that Glock knew the pistol remained in Jannuzzo's possession when he left Glock's employment in February 2003.").

exculpatory evidence during the criminal investigation and committed perjury at trial. For example, in <u>Wolf Camera, Inc. v. Royter</u>, the plaintiff – an employee at a Wolf Camera, Inc. store – was arrested for supposedly stealing money from a cash register.[62] The store manager attempted to frame the plaintiff by showing the police a videotape of the plaintiff taking money from the cash register.[63] But as it turns out, the money taken from the cash register was used to purchase supplies, which the store manager had approved.[64] The store manager attempted to hide the fact that he approved of the purchases by not producing the "paid out" slip.[65] "Ultimately, the paid out slip was not produced by defendants until the second day of Royter's criminal trial, after they had been ordered to do so by the trial judge."[66] In addition to hiding the paid out slip, the store manager failed to come forth with evidence that the cash register shortages continued to occur after the plaintiff was arrested and no longer employed at the store.[67] Moreover, the plaintiff "pointed out numerous inaccuracies

---

[62]    253 Ga. App. 254, 255-56 (2002).

[63]    <u>Id.</u> at 255.

[64]    <u>Id.</u> at 256.

[65]    <u>Id.</u>

[66]    <u>Id.</u>

[67]    <u>Id.</u>

in [the store manager's] testimony at an earlier hearing to determine whether Royter was entitled to unemployment compensation benefits."[68] "These inaccuracies include representations that . . . no shortages had occurred since Royter's termination."[69] Based on this evidence, the Georgia Court of Appeals held there was sufficient evidence to find that the denial of the directed verdict was procured by fraud.[70]

By contrast, here – as the Court noted above – the exculpatory evidence that the Defendants supposedly suppressed was actually presented to the jury, which ultimately convicted the Plaintiff on all charges. Moreover, the Plaintiff does not allege that the Defendants committed perjury at trial. Accordingly, the Plaintiff's guilty verdict and denial of his directed verdict should be conclusive evidence of probable cause. The Defendants' Motions to Dismiss the Plaintiff's state law and § 1983 malicious prosecution claims are granted. "This ruling comports with the policy of [Georgia] courts that malicious prosecution suits are disfavored and citizens are encouraged to bring to justice those who are apparently guilty."[71]

**B. Conspiracy Claim**

---

[68]     Id. at 257.

[69]     Id.

[70]     Id. at 259.

[71]     Blackford v. Wal-Mart Stores, Inc., 912 F. Supp. 537, 544 (S.D. Ga. 1996) (quoting Wal-Mart Stores, Inc. v. Blackford, 264 Ga. 612 , 614 (1994)).

The Plaintiff alleges that the Defendants conspired with state officials to maliciously prosecute him, violating his Fourth and Fourteenth Amendment rights. "[P]rivate defendants can be held liable in a § 1983 action if they act in concert with the state officials in depriving a plaintiff of constitutional rights."[72] "The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy."[73] "Thus, there must be an underlying constitutional infirmity from which [the] claim derives . . . ."[74] Because the Plaintiff has failed to adequately allege a malicious prosecution claim, there is no actionable underlying § 1983 claim from which the Plaintiff's conspiracy claim is properly derived. Accordingly, the Plaintiff's § 1983 conspiracy claim is dismissed.

**C. RICO Claims**

In Counts V through VII, the Plaintiff asserts claims under the Georgia RICO Act.[75] O.C.G.A. § 16-14-4(a) states that it is "unlawful for any person, through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any

---

[72]     Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990).

[73]     Id. (quoting N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990)).

[74]     Harris v. Pierce Cnty., Ga., No. CV 513-82, 2014 WL 3974668, at *14 (S.D. Ga. Aug. 14, 2014) (citing Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002)).

[75]     O.C.G.A. § 16-14-1, et seq.

interest in or control of any enterprise, real property, or personal property of any

nature, including money."[76] "'Racketeering activity' means to commit, to attempt to

commit, or to solicit, coerce, or intimidate another person to commit any crime which

is chargeable by indictment under" certain enumerated laws.[77] A "pattern" of

racketeering activity is defined as:

> [e]ngaging in at least two acts of racketeering activity in furtherance of
> one or more incidents, schemes, or transactions that have the same or
> similar intents, results, accomplices, victims, or methods of commission
> or otherwise are interrelated by distinguishing characteristics and are not
> isolated incidents, provided . . . that the last of such acts occurred within
> four years . . . after the commission of a prior act of racketeering
> activity.[78]

Thus, "to state a claim under the civil RICO statute, a claimant must allege at least two

predicate acts of conduct that are crimes chargeable by indictment under certain laws

of the state of Georgia or the United States."[79] And, importantly,  RICO claims "are

---

[76]      O.C.G.A. § 16-14-4(a).

[77]      O.C.G.A. § 16-14-3(5)(A).

[78]      O.C.G.A.  § 16-14-3(4)(A).

[79]      Dalton v. State Farm Fire & Cas. Co., No. 1:12-CV-02848-RWS, 2013
WL 1213270, at *3 (N.D. Ga. Mar. 22, 2013).

essentially a certain breed of fraud claims, [and] must be pled with an increased level of specificity."[80] Consequently, a plaintiff must allege:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the [P]laintiff, and (4) what the [D]efendants "obtain as a consequence of the fraud."[81]

Here, the Defendants move to dismiss the Plaintiff's RICO claims, arguing, *inter alia*, that the Plaintiff has failed to adequately allege at least two predicate acts. The Court agrees. For the first predicate act, the Plaintiff alleges that Defendants committed witness tampering. Specifically, the Plaintiff alleges that the "Defendants Core and Renzulli improperly influenced and attempted to influence the testimony of Peter Manown at his proffer and thereafter in negotiating his restitution."[82] And that "Renzulli improperly influenced Mr. Connor to alter affidavit testimony and withhold exculpatory statements."[83] With regard to Manown, the Complaint's allegations do not

---

[80]    Ambrosia Coal & Constr. Co. v. Morales, 482 F.3d 1309, 1316 (11th Cir. 2007).

[81]    Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1371 (11th Cir. 1997) (quoting Fitch v. Randor Industries, Ltd., No. 90-2084, 1990 WL 150110, at *2 (E.D. Pa. Sept. 27, 1990)).

[82]    Am. Compl. ¶ 194.

[83]    Id.

amount to influencing a witness under O.C.G.A. § 16-10-93 or §16-10-32. Based on an excerpt from the proffer in the Complaint, it appears that Renzulli stated that he did not believe Gaston Glock Sr. was a "bad guy."[84] He does not attempt to threaten Manown into changing his testimony with regard to Gaston Glock Sr. Moreover, the allegation that "Renzulli tried to force Manown into implicating Jannuzzo in some of Manown's own activities," fails to meet the fraud pleading standard. It does not note the actual content of Renzulli's statements. The allegation regarding Manown's restitution suffers from the same problem; the Plaintiff fails to allege the content of the coercive comments that were made to Manown during the negotiations of his restitution.[85] With regard to Connor, there are also insufficient allegations to conclude that the Defendants engaged in witness intimidation or tampering. The Plaintiff states that Connor was influenced into changing his affidavit, but this allegation is based on Core's statement that Harrison "educated" Connor.[86] The Complaint fails to state exactly what threats were made by Harrison or any of the other Defendants.

As to the second predicate act, the Plaintiff alleges that the Defendants violated O.C.G.A. § 16-10-94(a) by tampering with evidence. However, the allegations in

---

[84]   Id. ¶ 82.

[85]   See id. ¶¶ 88-91.

[86]   See id. ¶ 128.

relation to the Defendants' purported evidence tampering do not meet the Rule 9(b) pleading standard. The Plaintiff states in his Response Brief that the allegations include "misuse of corporate records to obscure Glock, Inc.'s actual knowledge and to purportedly demonstrate that Glock, Inc. did not know that Jannuzzo had the pistol, when in fact, corporate records and corporate officers indisputably demonstrated the opposite."[87] But the Plaintiff fails to cite to any paragraphs in his Complaint that contain these allegations. Moreover, the Plaintiff alleges in his Complaint that the Defendants relied on corporate records during the criminal trial that "the Court of Appeals concluded actually show that the pistol remained in Mr. Jannuzzo's possession."[88] The Plaintiff, therefore, has failed to adequately plead that the Defendants "destroy[ed], alter[ed], conceal[ed], or disguise[d] physical evidence" in violation of O.C.G.A. § 16-10-94(a).

Lastly, the Plaintiff alleges that the Defendant Renzulli committed perjury in violation of O.C.G.A. § 16-10-70. Specifically, the Plaintiff alleges that "Renzulli committed perjury concerning a matter affecting his credibility."[89] Like the Plaintiff's other allegations, this, too, fails Rule 9(b)'s particularity requirement. In total, the

---

[87]   Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 60.

[88]   Id. ¶ 132.

[89]   Id. ¶ 121.

Plaintiff has not adequately alleged that the Defendants committed at least two predicate acts, and, therefore, the Plaintiff's RICO claims are dismissed.

## IV. Conclusion

For these reasons, the Court GRANTS the Defendants Glock, Inc., Consultinvest, Inc., and John Renzulli's Motion to Dismiss [Doc. 21], and GRANTS the Defendant Robert Core's Motion to Dismiss [Doc. 22].

SO ORDERED, this 31 day of May, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge